## JOHNSON v. MATSON.

No. 6210.

Circuit Court of Appeals, Ninth Circuit.

Dec. 6, 1930.

Ernest J. Torregano, Oliver Dibble, Robert L. McWilliams, all of San Francisco, Cal., and William Ritchie, Jr., of Omaha, Neb. (August B. Rothschild, of San Francisco, Cal., of counsel), for appellant.

I. I. Brown, Jerome H. Bayer, Maxwell McNutt, and Marvin C. Hix, all of San Francisco, Cal., for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

The appellant filed a petition in involuntary insolvency against Walter J. Matson, who subsequently died, and whose executrix, Frances E. Matson, has been substituted. The appellee filed an answer denying, among other things, that Hale Company, a corporation, a bankrupt, was a creditor of Walter J. Matson. The case was tried upon this issue, among others, and the referee, acting as special master, found that Hale Company was not a creditor of the alleged bankrupt. This finding was approved by the district court, and the petition was denied and the bankruptcy proceeding dismissed.

A review of the evidence thus passed on by the special master and by the District Court is sought on the ground that the evidence is undisputed, and the conclusion deducible from the undisputed evidence is one of law which has been erroneously determined in the lower court.

The evidence before the referee and before the District Court consisted largely of a transcript from the books of Hale Company, showing a balance due from Walter J. Matson, alleged bankrupt, of over $20,000 and a statement referred to as a confession made by the bankrupt in the presence of the officers and representatives of the Honolulu Plantation Company and the Mason By-Products Company wherein the alleged bankrupt gave detailed information of the method by which he had swindled these two companies, of each of which he had been the trusted secretary for many years, out of about $500,-000. This result has been brought about largely by reason of an agreement entered into by the alleged bankrupt with Hale Company whereby he was to receive one-half the profit resulting from the sale by Hale Company of sugar turned over by him to Hale Company in violation of the authority vested in him as sales manager of the Honolulu Plantation Company which required him to sell sugar for cash on no more than seven days' credit. In consideration of this unau-

thorized delivery of sugar to Hale Company, the bankrupt was to receive one-half of the profits resulting from the sale of the sugar by Hale Company. It was understood by Hale Company and by Matson, the alleged bankrupt, that the agreement entered into between them involved a breach of trust on the part of Matson. To prevent the officers of the Honolulu Plantation Company from discovering the fraud which had been perpetrated upon the company Matson made false entries in the books of the Honolulu Plantation Company, crediting payments for sugar so transferred by Hale Company when no such payments had been in fact made. Later, in connection with these transactions, and to prevent a discovery thereof, the alleged bankrupt, in his capacity as secretary of the Mason By-Products Company, issued trade acceptances in favor of Hale Company aggregating $114,000. In July or August, 1925, he caused 7,500 bags of sugar worth $42,647.-50 to be transferred to Hale Company in order to take care of an indebtedness of that company. At the time this was done, Hale Company was in financial distress, and the sugar was transferred to prevent a discovery of previous illegal transactions between Hale Company and the alleged bankrupt. From time to time during the period covered by these transactions the alleged bankrupt approached George Braun, who was managing the Hale Company, and asked for loans of money. The various amounts claimed by the appellant as a debt owing from the alleged bankrupt to Hale Company consisted of these advances. Although it appears that Hale Company was in financial straits during almost the whole period covered by these advancements, it never demanded repayment of the money from the alleged bankrupt, nor did it ever say when it would expect repayment or indicate in any way that it would expect repayment of them. The alleged bankrupt believed that these moneys would be advanced to him when he asked for them, as they were, and that repayment would not be expected of him because of the dealings between them with relation to the sugar and denatured alcohol accounts of the Mason By-Products Company.

It would seem clear that money paid by Hale Company to the secretary of the Honolulu Plantation Company on account of the sugar of that company, which he had transferred to Hale Company under the guise of a sale, would belong to the company whose property had been used in this manner to obtain such payment. If the alleged bankrupt, while acting in a fiduciary capacity for the company he had defrauded, received money because of his transfer of the property of these companies to Hale Company, it is entirely immaterial whether Hale Company was constrained to pay it to prevent the defrauded principal from ascertaining the larger indebtedness owed by them, or whether it was a bribe paid to the secretary to induce him to keep the fraud from the knowledge of the principal, or whether it was claimed or considered to be a loan brought about by the same consideration. In any event, the obligation of the employee would be to pay it to his employers and not to return it to Hale Company. Furthermore, there was no express agreement to repay it to Hale Company, and, under the circumstances, the law would imply none.

The referee in the court below decided the case upon the theory that one joint feasor could not recover from another. This was no doubt correct, and would answer the contention that the appellant has a provable claim against the alleged bankrupt. We think, however, regardless of this contention, the evidence discloses that payments made by Hale Company to Matson belong to the companies he represented, and that he had no right to apply them to his own purposes.

It is contended that some of the advances made by Hale Company were made before the illegal agreement was entered into between that company and the alleged bankrupt, and that, this being true, they were creditors to that extent, regardless of the subsequent illegal agreement. The amount claimed to have been thus advanced is $3,-819.06, which is shown on the books of Hale Company as the balance due on January 1, 1923. In the confession above referred to, the alleged bankrupt stated that originally he was an owner of a half interest in the stock of a corporation known as the Hale Company; that at that time he gave his stock to Ira N. Moore as a gift to avoid the stockholder's liability upon the stock of that company, knowing that the Hale Company was going to take a big loss by reason of some export sugar they had sold to some eastern jobbers; that the Hale Company was reorganized and became known as Hale Company organized under the laws of Nevada; that ever since he disposed of his half interest in the Hale Company about four years previously (January 31, 1922) he had an arrangement with Braun (manager of Hale Company) under which he has been, and would now be, entitled to one-half of the profits

made from dealing in sugar obtained from the Honolulu Plantation Company. It thus appears that the illegal arrangement was contemporaneous with the organization of the new company. As to any advances made before that time by Hale Company, there is nothing to indicate that it was the intention of the alleged bankrupt to pay the same to either the old or new company, other than entries in the books of Hale Company showing debits and credits in the personal account of W. J. Matson for the years 1921 to 1926, inclusive.

■ These books are objected to by the appellee upon the ground that they were incompetent to prove an indebtedness in favor of Hale Company against W. J. Matson. This objection should have been sustained. They were self-serving declarations not in the ordinary course of business of the company and purporting to show an indebtedness due from Matson to the company without any statement showing the reason for the obligation. With the exception of certain items for long-distance telephone calls, there is no indication in the books as to the nature of the indebtedness or the reason for the charge. Under the circumstances, these entries come under the head of self-serving declarations, and do not come within the exception of the rule with relation to books of account kept by merchants. It was stipulated that the bookkeeper of Hale Company would testify if he were present that the entries were made in the regular course of business of the Hale Company, but the stipulation went no further, and was insufficient to justify the introduction of these accounts. In addition thereto, certain checks were introduced. These checks were drawn in favor of the alleged bankrupt by Hale Company, and were indorsed by the alleged bankrupt, and evidently he received the money called for by these checks. No testimony is offered explaining these checks, and the appellee relies upon the presumption that money thus paid is presumed to have been paid upon an obligation due from the payer to the payee. In view of the admissions of the alleged bankrupt, however, that he had received large sums of money from the Hale Company, our conclusion must be drawn from the facts thus explained by him in his alleged confession, and, so explained, there was no obligation on his part to repay these amounts.

■ Returning to a consideration of the advances claimed to have been made by Hale Company to the alleged bankrupt before transferring his stock in the Hale Company and the agreement made with the new Hale Company and the concurrent agreement with relation to the illegal transfer of property owned by the companies represented by the alleged bankrupt, it is a reasonable inference from the evidence that this was one transaction by which the alleged bankrupt surrendered his stock and the new company was organized and the agreement was made that thereafter the alleged bankrupt should receive one-half the profits derived from the sugar transferred by him to the new company, rather than as theretofore that he should receive half interest in the entire profits of the corporation in which he held one-half the stock. It is hardly consistent with the agreement entered into between the alleged bankrupt and George Braun, the co-owner of the old corporation, "The Hale Company," that it was contemplated that, notwithstanding the reorganization and the surrender by the bankrupt of his entire interest in the corporation, he was still under obligation to repay amounts theretofore advanced him by the old company. There is no evidence that the old company transferred any indebtedness owed it by the alleged bankrupt. The evidence abundantly supports the finding of the trial court and the referee.

■ The appellant also calls attention to the fact that the answer to the petition in involuntary insolvency filed by the appellee was verified of her own knowledge, and was filed before the referee under stipulation that it might be considered as having been filed with the clerk, and that the propriety of leave to amend the petition should be considered by the court in connection with the referee's report. When the matter came before the District Court, appellant sought to be relieved from the stipulation on the ground that the evidence disclosed that the executrix knew nothing of the facts of her own knowledge, and therefore her verification of her answer was not in proper form. There was no abuse of discretion on the part of the trial court in declining to relieve the appellant from his stipulation with relation to the filing of the answer or in refusing to strike out the answer.

Order affirmed.