**In re TRUSTEES SYSTEM CO. OF LOUISVILLE.**

**TRUSTEES SYSTEM CO. OF LOUISVILLE v. UNITED STATES.**

In Bankruptcy Nos. 2094, 10866.

District Court, W. D. Kentucky.

Sept. 23, 1939.

362

J. Blakey Helm and Henry McElwain, both of Louisville, Ky., for debtor-plaintiff.

Eli H. Brown, III, U. S. Dist. Atty., of Louisville, Ky., for the United States.

HAMILTON, District Judge.

In the above-styled actions, the debtor-plaintiff seeks to recover income taxes alleged to have been overpaid for the calendar years 1930 and 1931 and resists the payment of an additional assessment for the calendar year 1932.

The Trustees System Company of Louisville, debtor in action No. 10866 and plaintiff in No. 2094, with its principal place of business at Louisville, Kentucky, was a wholly-owned subsidiary of the Trustees System Service Corporation, a Virginia corporation, with its principal place of business in Chicago, Illinois, which was a wholly-owned subsidiary of the Industrial Loan & Guaranty Company, an Alabama corporation, which owned all the capital stock of the Trustees System Extension Corporation, created under the laws of Illinois, with its principal place of business at Chicago.

The Trustees System Service Corporation was engaged in the industrial or small loan business in various cities of the United States through thirty-three wholly-owned subsidiaries of which the debtor-plaintiff was one.

It sold to the public, through the Trustees System Extension Corporation, guaranteed dividend preferred stock and six percent "gold notes" of its subsidiaries and executed its notes to them for the net proceeds of the sales and made advances without charge to each for their loans to customers and the subsidiaries remitted to the parent their collections out of which it paid dividends on the preferred stock and interest on "gold notes" of the subsidiaries.

The parent company kept in its Chicago office its books of account on an accrual basis, and those of its subsidiaries reflecting therein all inter-companies and outside transactions. The subsidiaries kept no books at their respective places of business except loan and collection sheets and the officers and directors of the parent and subsidiaries were inter-locking. The business was carried on without financial difficulties until October 1932 when the parent company was placed in equity receivership in the United States District Court for the Northern District of Illinois at Chicago, Illinois, and the debtor-plaintiff was placed in equity receivership in this Court on June 19, 1933. It later entered bankruptcy under 77B of the Bankruptcy Act, 11 U.S.C.A. § 207 from which it has emerged a going concern.

The parent company had on its books an account, designated "rent and service", to which was credited monthly to the debtor-plaintiff, sums equal to its actual Louisville office expenses including advertising and the salary of its manager, and also $250, which was estimated to be the fair monthly rental value of debtor-plaintiff's offices at 415 W. Market Street, Louisville, Kentucky, and other items unidentified except "additional rent and service."

This account was continued through the years 1930, 1931 and 1932 up to October. Countervailing entries were on the books of the debtor-plaintiff which it closed at the end of each year into profit and loss, but the parent company deferred its accounts. One

of the bookkeepers in charge of the books of both parent and debtor-plaintiff prepared a temporary trial balance of the debtor-plaintiff at the end of each month and delivered it to the general bookkeeper of both, who in turn delivered it to the general auditor and comptroller of both, who noted on it in pencil the charges and credits to be made on account of rent and service. From these notations, permanent journal entries were made of the credit and debit items and entered on the respective ledgers of the companies.

During the calendar year 1930 the debtor-plaintiff, out of its rent and service accounts, charged to profit and loss $78,411.21 for the calendar year 1931, $74,891.16, and for nine months of the calendar year 1932, $55,796.21. In its tax returns for the calendar years 1930 and 1931, it included in taxable income the above sums but the receiver omitted them for the calendar year 1932. He timely filed claims for refunds for the years 1930 and 1931 and revised the corporation's returns by eliminating rent and service credits and claimed additional deductions of $37,901.14 for the year 1930 and $19,512.97 for the year 1931.

On audit and review, the Commissioner of Internal Revenue revised the receiver's return for the calendar year 1932 and included therein $55,796.21 rent and service as income, after which the receiver filed an amended return and claimed additional deductions of $21,036.64.

The plaintiff seeks to recover in action No. 2094 $8,102.19 alleged to have been overpaid in taxes and interest for the calendar year 1930 and $10,181.09 for the calendar year 1931.

In No. 10866, pursuant to the assessment of the Commissioner of Internal Revenue, the Collector of Internal Revenue for the District of Kentucky has filed a claim for additional taxes of $10,014.10. The burden rests on the debtor-plaintiff to establish by a fair preponderance of the evidence that the taxes which it seeks to recover and avoid are invalid.

This rule follows because the debtor-plaintiff must overcome two presumptions: first, that its books were cautiously kept and entries made with forethought and after a consideration of all the facts and that the statements therein are admissions against it; second, that taxes paid are lawfully collected upon assessments by the Commissioner of Internal Revenue and are due on a claim filed by the Collector of Internal Revenue pursuant to assessment theretofore made by the Commissioner. United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Niles Bement Pond Company v. United States, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901; Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379.

Presumptions operate only to relieve the party in whose favor they work from going forward in evidence and the weight of evidence necessary to overcome them varies in relation to the weight of the evidential facts bringing them into existence. Thus, the presumption of the correctness of entries in books depends on the underlying facts producing them and likewise the presumption of the correctness of the determination of the Commissioner of Internal Revenue depends on the weight of the facts on which he made his assessment. Bernheim Distilling Company v. Mayes, D. C., 268 F. 629. An examination of the record shows that the Commissioner of Internal Revenue, in making his assessments, acted solely on information furnished by the debtor-plaintiff from its books. It therefore follows that, unless the real facts show it received the income taxed the presumptions fail and it is entitled to relief for there are no contrary proofs in the record. Lunsford v. Commissioner, 6 Cir., 62 F.2d 740, 741.

Income cannot be determined by bookkeeping unless the facts underlying the entries show it was income as defined in the Statute. Doyle v. Mitchell Bros. Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054; However, income may arise from a credit as well as from the receipt of money or other tangible property. Helvering v. Midland Insurance Company, 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612, 108 A.L.R. 436. No system of bookkeeping will justify the government in claiming taxes nor support a taxpayer in claiming exemptions, if the real facts show the contrary. Southern Pacific Railroad Company v. Muenter, 9 Cir., 260 F. 837; Doyle v. Mitchell Bros. Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054.

The bookkeeping supervisor of the parent and its subsidiaries, testified that the debtor-plaintiff made monthly reports to him which he checked and from which he had one of his subordinates prepare a temporary monthly trial balance showing income, expenses, assets and liabilities,

which was delivered to the general auditor and comptroller of both the parent and its subsidiaries. This officer directed him to credit on the books of the parent to the debtor-plaintiff all of its expenses and to charge them to the parent on the books of the debtor-plaintiff.

He testified that, in addition to these items of expense actually incurred and shown on the reports of the debtor-plaintiff, the general auditor and comptroller made pencil notations arbitrarily increasing the charges and credits for rent and service. The bookkeeping supervisor then caused to be made final reflecting entries thus approved. He also caused to be made memoranda of the additions to the account as authorized by the general auditor and comptroller, all of which are in the record and in the same form, of which the following is typical:

poration. The accountant who personally made the audit, testified he found on the books of the Trustees System Service Corporation, rent and service credits to each of its subsidiaries but could find no basis for any of them and he interviewed the general auditor and comptroller and other officers of the companies as to the reason therefor, but received no information except from F. J. Gibbons, president of the debtor-plaintiff, who stated that they were made for the purpose of enabling the debtor-plaintiff to pay dividends on its stock. The accountant stated that the total credits outstanding to all the subsidiaries were between six and seven million dollars and the Trustees System Service Corporation did not have corresponding debits as expense items, but carried them in a deferred charge account which were car-

No. 50287

Company: Trustees System Co. of Louisville Office Date Feb. 28–1930

| Dr. T. S. Extension Corp. 5,000.00 | Cr Rent & Services 5,000.00 |
|---|---|
| Additional Rent and Services for February | 1930 |
| Cust. Led. | Journal 66 |
| Authorized FDN | CDS |

For the calendar year 1930, $64,500 additional credits were set up on the books of the parent to the debtor-plaintiff; for 1931, $60,000 and for 1932, $51,500, none of which was an actual expense incurred in the operation of its Louisville office.

The bookkeeping supervisor testified he did not know the purpose of making these credits. The assistant secretary of the debtor-plaintiff testified he made up its expense reports and personally made some of the memoranda and vouchers for the additional credits but that he knew of no basis for them, as he acted solely at the direction of the general auditor and comptroller.

The manager of the debtor-plaintiff testified he knew of no services it rendered to the parent supporting the credits. Peat, Marwick, Mitchell & Company, certified public accountants, under an order entered in the District Court of Illinois, in the receivership proceedings of the parent company, made an audit of the books and records of the debtor-plaintiff and of its parent, the Trustees System Service Cor-

ried forward from year to year in its balance sheet.

All officers and supervisory employees of the debtor-plaintiff and of the parent corporation who testified stated they had no knowledge of a basis for the additional rent and service credits to the debtor-plaintiff on the books of the parent and they knew of no service it had rendered for which it could legally charge.

F. J. Gibbons, president of the debtor-plaintiff, J. G. Born, secretary-treasurer, F. D. Nicholson, general auditor and comptroller, were under indictment for frauds in the management of the Trustees System Service Corporation and subsidiaries and were fugitives from justice. They did not testify but all other officers and employees who had any knowledge on the subject did.

Clyde L. Day, receiver of the Trustees System Service Corporation, testified that he could find in its records no factual basis for the rent and service credits and John Smart of the accounting firm of Allen &

Smart, who was employed by Day under orders of the Federal Court, testified that as a result of his examination of the books and records of the company, he found no support for the credits.

When the debtor-plaintiff went into receivership, it owned $564,501.57 demand notes of the Trustees System Service Corporation and filed a claim··on them in the equity receivership action in the United States District Court for the Northern District of Illinois, Eastern Division.· On May 10, 1933, an agreed judgment was entered in that action against the Trustees System Service Corporation for .the face of the notes, credited by all rent and service charges theretofore made by the debtor-plaintiff against the Trustees System Service Corporation and also all other charges for office expenses and pro rata general office supervision and expenses transferred, less dividends of $130,421.96 paid by the debtor-plaintiff to the Trustees System Service Corporation for the calendar years 1929 to and including 1932 and commissions of $86,407.50 which it had theretofore paid the Trustees System Service Corporation for the sale of its preferred stock and "gold notes". The net. balance adjudged due the debtor-plaintiff was $302,489.60.

█ The question raised is whether the debtor-plaintiff's evidence is sufficient to rebut the presumptions against it. Full and conclusive proof is not required but it should be at least sufficient to render the existence of the negative probable in order to overcome the presumptions. Giving due weight, credit and value to the aggregate evidence, I am of the opinion it· sufficiently meets the defendant's prima facie case to shift the burden to it to prove that the additional credits were in fact income. McNeill-Allman Construction Company v. United States, Ct.Cl., 21 F.Supp. 410; Spring Canyon Coal Company v. Commissioner, 10 ·Cir., 43 F.2d 78, 76 A.L.R. 1063; Corn Exchange Bank v. United States, 2 Cir., 37 F.2d 34; Lunsford v. Commissioner of Internal Revenue, supra.

While the two companies were separate legal entities, they were merged, the debtor-plaintiff being but a part of· the Trustees System Service Corporation and ·acting merely as its agent, subject in all things to its proper direction and control and for all practical purposes, we are dealing with one entity. Southern Pacific Company v. Lowe, 247 U.S. 330, 339, 38 S.Ct. 540, 62 L.Ed. 1142; Gulf...Oil Corporation v.

Lewellyn, 248 U.S: 71, 73, 39 S.Ct. 35, ·63 L.Ed. 133.

Had the two corporations been dealing at arms-length, .the countervailing book entries would have shown gross income to the debtor-plaintiff and a corresponding deduction to the Service Corporation and in determining the income tax liability,. the debtor-plaintiff would have reported income and the Service Corporation would have taken a corresponding deduction.

There is no contradiction in the record of the testimony of the officers and agents of the debtor that the debtor-plaintiff rendered no service to the Trustees System Service Corporation, which would support service charges or rented it property which would support a rent claim. However, there is substantial evidence supporting the conclusion that the Trustees System Service Corporation intended to reimburse the debtor-plaintiff for its actual expenses in the operation of its business including $250 per month estimated fair rental for the space it occupied in its own building.

The fact that the Trustees System Service Corporation did not treat the additional rent and service credits to the . debtor-plaintiff as its current expenses is substantial evidence that they were not income to the debtor-plaintiff. This is especially true as book entries of the debtor-plaintiff are the only evidence here to support the assessments. Appeal of Estate of David R. Daly, 3 B.T.A. 1042;_ Noel v. Parrott, 4 Cir., 15 F.2d 669; Fisher· v. Commissioner, 2 Cir., 59 F.2d 192; Botchford v. Commissioner, 9 Cir., 81 F.2d 914, 110 A.L.R. 281; Commissioner of Internal Revenue v. Bonwit, 2 Cir., 87 F.2d 764; Realty Bond & Mortgage Company v. United States, Ct. Cl., 16 F.Supp. 771; Johnson v. Matson, 9 Cir., 45 F.2d 550.

█ The rule is· not applicable here that the failure of a party to call a witness possessing peculiar knowledge concerning facts essential to his case raises the presumption that he would testify unfavorably. It is true that F. D. Nicholson, general auditor and comptroller, had peculiar knowledge of the essential facts in this case and was not called as a witness, but it is conceded that he was under indictment, a fugitive from justice, and could not be located for the service of subpoena or the taking of his deposition. Under such circumstances, no unfavorable inferences are to be drawn because of ·his absence. . Commonwealth v. John F. Costello,

119 Mass. 214; Reehil v. Fraas, 129 App. Div. 563, 114 N.Y.S. 17; Industrial Mutual Indemnity Company v. Perkins, 81 Ark. 87, 98 S.W. 709; Erie Railroad Company v. Kane, 6 Cir., 118 F. 223; Iowa Central Railway Company v. Hampton Electric Light & Power Company, 8 Cir., 204 F. 961.

 The doctrine of estoppel is unavailing as a defense as its rationale implies that injury or prejudice to the rights of the defendant must be shown in order to invoke it. The conduct of the debtor-plaintiff's officers constitutes no basis for estoppel even though they violated the law and practiced a fraud on the public, as it is never employed as a means of inflicting punishment for a wrongful act. There is nothing in the record showing that the United States would be compelled to change its position for the worse or be required to surrender, forego or alter what it has done by reason of the debtor-plaintiff being permitted to repudiate its conduct and assert rights inconsistent with the facts disclosed in its income tax returns. Estoppel does not arise unless one party induces another by some means to change his position to his detriment. United States v. Dunn, 268 U.S. 121, 45 S.Ct. 451, 69 L.Ed. 876; Jones v. United States, 96 U.S. 24, 24 L.Ed. 644; Oertel Company v. Glenn, D.C., 13 F.Supp. 651.

The case of Johnston v. McLaughlin, 9 Cir., 55 F.2d 1068, so strongly relied upon by the defendant, has no application here. It is true, in that case the corporation made its return and its tax was increased by reason of false statements of income made by its officers for the purpose of deceiving creditors and stockholders, but after the tax had been voluntarily paid, and an audit made by the Commissioner of Internal Revenue, the corporation entered into a closing agreement in accordance with the provisions of Section 606 of the Revenue Act of 1928, 26 U.S.C.A. § 1660(b) which provided it should be "final and conclusive * * *, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact". The Court properly held the corporation was estopped from repudiating its agreement. There was no closing agreement entered into in the case at bar.

After the settlement of May 10, 1933, between the debtor-plaintiff and the Trustees System Service Corporation, the auditor for the receiver recast the income and deductions of the debtor-plaintiff for the calendar years 1930 to and including 1932 and charged against gross income for the year 1930 additional office expenses of $37,901.14; for 1931, $19,512.97 and for 1932, $16,236.64 and allocated to each year $2,500 for general office supervision; also allocated to the years 1930, 1931 and 1932, $28,000 which was carried on the books of the Trustees System Service Corporation as a transfer to it of the debtor-plaintiff's expenses.

The Trustees System Service Corporation had on its books as a credit to the debtor-plaintiff, $34,713.54, identified "transfer of deferred charges". In the foregoing settlement, this entry was reversed, debited to the debtor-plaintiff and credited on the Trustees System Service Corporation's notes.

The auditor, in his recasting, allocated $8,139.39 of the above sum to each of the years 1929 to and including 1932. He also allocated to each of said years $2,300, out of the $13,800, credited on the notes of the Trustees System Service Corporation in the settlement. In these actions, the debtor-plaintiff claims these sums as additional deductions for the years to which allocated.

 Income must be computed with reference to a fixed period, usually twelve months, which is known as the tax year. Brown v. Helvering, Commissioner, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Burnet v. Sanford & Brooks Company, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383. Proving income or deductions for a period of years does not establish either for any one year.

 Net income must be determined in accordance with the method of accounting regularly employed in keeping the books of a taxpayer provided the system clearly reflects income as defined under the Statute. Losses, as well as gains, must actually exist, either realized or sustained during the tax year. Commissioner of Internal Revenue v. R. J. Darnell, Inc., 6 Cir., 60 F.2d 82.

 The burden rests on the debtor-plaintiff to establish, not only that it incurred the deductible expenses which it now claims, but also the year in which they were in fact sustained. Fidelity Title & Trust Company v. United States, 259 U. S. 304, 42 S.Ct. 514, 66 L.Ed. 953. This, it has failed entirely to do. No attempt was made to segregate or earmark the

claimed deductions to any particular year on the books of either the debtor-plaintiff or the Trustees System Service Corporation.

The income tax law contemplates that a taxpayer shall so keep his accounts that his income and deductions for each year may be thoroughly and completely shown and the burden rests on him when suing to recover taxes to establish his true tax liability by clear and convincing evidence. Reinecke v. Spalding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385; O'Laughlin v. Helvering, 65 App.D.C. 135, 81 F.2d 269.

The method of accounting followed by the debtor-plaintiff over a period of years may not be overthrown by a bookkeeping entry and a compromise settlement entered into between the parties after this controversy arose. The expenses it now seeks to deduct were accrued as debits against the parent and credited on its books to the debtor-plaintiff from the time it began business until May 10, 1933. Helvering v. Russian Finance & Construction Corporation, 2 Cir., 77 F.2d 324.

Debtor-plaintiff's income will be restated by deducting from gross income as determined by the Commissioner of Internal Revenue, $64,500 for the year 1930, $60,000 for the year 1931 and $51,500 for the year 1932. The debtor-plaintiff will have judgment for whatever sums were overpaid in taxes for 1930 and 1931 based on these adjustments and the claim of the Collector for 1932 will be adjusted accordingly. Counsel for respective parties will prepare findings of fact and conclusions of law conformable to this opinion.