Alex **BRODHAG**, Sophia **B.** Fruth, and the National Bank of Commerce of Charleston, Executors and Trustees under the Last Will and Testament of Elbert A. Fruth, deceased, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 69–115CH.

United States District Court,
S. D. West Virginia,
Charleston Division.

Nov. 27, 1970.

Harry B. Lambert, Conley, Thompson, Lambert & Legg, Charleston, W. Va., for plaintiffs.

Johnnie M. Walters, Department of Justice, H. E. Marmoll, Washington, D. C., and W. Warren Upton, U. S. Atty. Charleston, W. Va., for defendant.

JOHN A. FIELD, Jr., Chief Judge.

MEMORANDUM OPINION

This suit involves a dispute over the deductibility of two bequests made by decedent in his will. The facts which have been fully stipulated are as follows:

Decedent died October 16, 1964, leaving a gross estate of $270,754.03. In his will, decedent made bequests in the gross amount of $21,000 to the Trustees of the Trinity Evangelical Church of Charleston and to the Sunset Memorial Park Company. The Trustees of Trinity Evangelical Church are a statutory corporation to which deductible bequests can be made and a qualified bequest to the Sunset Memorial Park Company is deductible as a funeral expense for federal estate tax purposes.

The above-described bequests were made in trust, with the decedent's widow having a life interest in all of the income of the trust, plus such additional sums out of principal as needed or requested by her for living expenses, illness or funeral. The principal of the trust was also subject to the widow's invasion to meet the educational expenses of six named children. The trustees were also empowered to invade corpus with the approval of the widow for the education of poor children from Kanawha County, West Virginia. The specific will clauses read as follows:

"ARTICLE FOUR

"I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, of every name and nature whatsoever, and wherever situate, of which I shall die seized or possessed or to which I shall be entitled, or own an interest therein at the time of my decease, unto my Executors and Trustees hereinafter named, and their successor or successors, in trust, for the uses and purposes of establishing the 'E. A. Fruth Education and Charity Trust' as hereinafter set forth; * * *.

"ARTICLE FIVE

"In the event my said wife, Sophia B. Fruth, shall survive me, my Executors and Trustees shall pay to her, monthly as received, for her own use and benefit all the income from said E. A. Fruth Education and Charity Trust during the term of her natural life, and the term 'income' shall include increment realized in cash on any fund,

or return on any investment in excess of the original cost. My said Executors and Trustees shall also pay from time to time to my said wife from the principal of said Trust such additional sums as may be needed or requested by her, to enable her to live in the station of life to which she is accustomed and may pay from the principal of said Trust the expenses of any illness and her funeral. The decision of my wife while living as to the necessity for and the amount of any such payment of expenses for her benefit shall be conclusive on all persons, and the decision of my Executors and Trustees as to the payment of any of her expenses unpaid at her death shall likewise be conclusive.

## "ARTICLE SIX

"During the life of my wife, Sophia B. Fruth, and provided she shall first approve in writing such expenditures, my said Executors and Trustees shall have full power and authority, in their discretion, to disburse such sums as they may deem proper or appropriate from the principal of the E. A. Fruth Education and Charity Trust for the education or partial education, of the children of my nieces and nephews and the children of the nieces and nephews of my wife, Sophia B. Fruth, namely; Alex E. Brodhag, Junior, William Elbert Brodhag, Earl Edgar Brodhag, Mary Emma Edgar Whiteman, Cary Louise Edgar Voross and Barbara Edgar Armstrong. My said Executors and Trustees are also hereby given full power and authority, in their discretion, to expend such additional sums from the principal of said Trust as they may believe proper for the education or partial education of poor worthy children from Kanawha County, West Virginia; provided, however, that any amount expended for such charitable purposes shall first be approved in writing by my said wife, Sophia B. Fruth."

On January 12, 1966, decedent's widow, who is now 81 years old and has a $200,000 net worth of her own, executed, acknowledged and delivered to plaintiffs and to Grant P. Hall, Commissioner of Accounts of Kanawha County, a document entitled "Partial Disclaimer of Bequest," purporting to waive her rights to invade, use, or consume the remainder interests, but retaining her right to the income for life. Plaintiffs agreed to the "disclaimer" on the same day. As of that date, the surviving spouse had not in any way invaded the remainder interest bequeathed to the trustees or the cemetery company. On January 17, 1966, the "disclaimer" was entered on the records of the County Clerk pursuant to court order of that same date.

Plaintiffs also filed the federal estate return on January 12, 1966, with the alleged "disclaimer" attached thereto. In arriving at the net taxable estate, plaintiffs claimed as a charitable deduction the value of the remainder interests bequeathed to the trustees and the cemetery company. Upon audit, defendant timely assessed $7,797.49 in taxes and interest which was paid May 16, 1968. $5,422.23 of that assessment was attributable to the disallowance of the deductions claimed by the estate for the bequests to the trustees and the cemetery company. Plaintiff's filed a timely refund claim on October 3, 1968. On November 25, 1968, the Director of Internal Revenue notified the plaintiffs that the claim for refund had been disallowed in its entirety, and plaintiffs filed the present action on May 16, 1969.

The net value of the two bequests after elimination of the value of the surviving spouse's life interest is $16,653.42. Plaintiffs claim the right to deduct the net amount of the bequests to the church trustees as a charitable bequest under section 2055(a) (3) of the Internal Revenue Code, and to the cemetery as a legitimate funeral expense under section 2053(a) (1) of the 1954 Internal Revenue Code. Defendant argues that the deduction would be improper because the will allows the surviving spouse to invade the trust principal from which the bequests are to be paid without pro-

viding an ascertainable standard for that invasion. Defendant further argues that the alleged "disclaimer" was ineffective, and being ineffective, it did not excuse the absence of an ascertainable standard. If either the "disclaimer" is effective or the will standing alone provides an ascertainable standard the plaintiffs will prevail. If, however, the "disclaimer" is not effective and the will does not provide an ascertainable standard, the defendant will prevail.

▆ Does the will by its terms provide an ascertainable standard for invasion of the principal by the surviving spouse? Section 20.2053–1(b) (3) of the Treasury Regulations on Estate Tax (1954 Code) concerning funeral expenses provides:

"An item may be entered on the return for deduction though its exact amount is not then known, provided it is ascertainable with reasonable certainty, and will be paid. No deduction may be taken upon the basis of a vague or uncertain estimate."

Section 20.2055–2(a) of the Treasury Regulations on Estate Tax (1954 Code) concerning transfers for charitable uses provides:

"If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest."

A power to consume, invade, or appropriate income or corpus, or both, for the benefit of the possessor is limited by an ascertainable standard if the extent of the possessor's duty to exercise and not to exercise the power is reasonably measurable in terms of his or her needs for health, education, or support (or any combination of them). Estate Tax Regulations, Section 25.2514–1(e) (2).

The apparent genesis of the ascertainable standard is the case of Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S. Ct. 291, 73 L.Ed. 647 (1929), in which the testator's will made bequests to charities subject to the life estate of the wife, and allowed the wife to use from the principal any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys." Mr. Justice Holmes, speaking for the Court, held that "[T]he standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. * * *. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

Plaintiffs cite Ithaca in their brief and point out that the authorization for invasion of the principal contains the prescribed language "to enable her to live in the station of life to which she has been accustomed." However, another dimension is added by the will's provision that "The decision of my wife while living as to the necessity for and the amount of any such payment of expenses for her benefit shall be conclusive on all persons." This provision brings the instant case relatively close to Merchant's National Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943), cited by defendant. In Merchant's Bank, the trustee was authorized, in his discretion, to invade the corpus for the "comfort, support, maintenance and/or happiness" of the widow, and was directed to exercise that discretion with liberality towards the widow and to consider her "welfare, comfort and happiness prior to the claims of residuary beneficiaries.", i. e. the charities. The Court pointed out that under that will the extent to which the principal might be used was not restricted by a fixed standard and therefore denied the deduction.

Even closer to the instant case is Merrill Trust Company v. United States, 167 F.Supp. 474 (N.D.Maine), also cited by defendant. There, it was provided that if more than the income was necessary for the benficiary's "comfortable care, support and maintenance and her judgment in this respect is to be conclusive,"

the trustee was authorized to pay over to her such part of the principal as she in writing might request. The Court held that plaintiff failed in its burden of showing an ascertainable standard and denied the deduction. In their reply brief plaintiffs argue that *Merrill Trust, supra,* is distinguishable as not containing an objective standard in the will. Yet Judge Gignoux, at page 478 of the opinion, points out " * * * provisions authorizing payments for the life beneficiary's 'comfort, maintenance and support,' 'care, maintenance and support,' 'comfort and welfare,' and similar terms, have been interpreted to provide for the standard of living which the beneficiary had enjoyed at the time of the decedent's death, and as so construed have been held to establish a fixed standard, not solely within the life tenant's discretion, under which the value of the charitable remainder is acertainable and deductible. (citations omitted) But none of these authorities can help the plaintiff. For here the life beneficiary was given an uncontrolled discretion to determine the amount necessary for her comfortable care, support and maintenance, and the testatrix expressly directed that her judgment in this respect was to be conclusive. This language precludes any fixed objective standard by which the extent of the life tenant's power to invade principal could be ascertained at the date of testatrix' death." The language in decedent's will in the instant case is practically identical. It, too, precludes any fixed standard by which the power to invade the principal could be ascertained. It makes the purported standard expressed in decedent's will incapable of objective interpretation by the Commission or by the Courts. In the *Ithaca* case "It was not left to the widow's discretion * * *;" here "it" was clearly left to the widow's discretion. Therefore, the Court must rule that the will does not contain an ascertainable standard such as would qualify plaintiffs for the deduction sought.

Having so concluded, the Court must now consider the second issue. Did the holder of the life estate file an effective disclaimer and thereby eliminate the necessity of an ascertainable standard?

In order to be effective under federal law, the disclaimer must be made within the period of time allowed for filing a return, and must be irrevocable at the time the deduction is allowed. Treasury Regulations on Estate Tax, Section 20.-2055–2(c) (1). In addition, under Section 20.2041–3(d) (6) of the Estate Regulations, and Section 25.2514–3(c) (5) of the Gift Tax Regulations, the "disclaimer or renunciation must be unequivocal and effective under local law" and—

> " * * * the determination as to whether or not there has been a complete and unqualified refusal to accept the rights to which one is entitled will depend on all the facts and circumstances of the particular case, taking into account the recognition and effectiveness of such a disclaimer under local law."

Defendant concedes that the "disclaimer" filed by decedent's widow, the holder of the life estate, was made within the period of time allowed for filing the estate tax return, but argues that the "disclaimer" was not effective under West Virginia law as required by Section 25.2514–3(c) (5).

Defendant points out in its brief that West Virginia has provided for a statutory "disclaimer of gifts under wills or property passing by intestacy" as follows (W.Va.Code Ann.Sec. 42–4–3):

> "Any devisee or beneficiary who is sui juris, shall have the right, within two months from the date on which the will is admitted to probate, to disclaim such devise or bequest."

Defendant further points out that decedent's will was admitted to probate October 22, 1964, but the disclaimer was not filed until some 14 months later, seemingly well beyond the period allowed by statute.

Plaintiffs at great length contend that the purported "disclaimer" is valid under West Virginia Code Ann. Sections 36–5–1, 36–5–2 and 36–5–3, which deal with releases of powers of appointment and contain no time limit. The fallacy of plaintiffs' argument appears in their own brief some six pages following their allusion to Sections 36–5–1, 36–5–2 and 36–5–3 of the West Virginia Code. There plaintiffs state:

"The Auditor for the Revenue Service denied the deduction asserted in this action by reason of the following sentence in Regulation Section 20.2055 (2) (c) (2):

" 'The release or exercise of a power by the donee of the power in favor of a person or object described in paragraph (a) of Section 20.2055–1 does not result in any deduction under section 2055 in the estate of the donor of a power (but see paragraph (b) (1) of section 20.2055(1) with respect to the donee's estate.'

"The erroneous reasoning of the Auditor can be clearly demonstrated as follows:

"1. It utterly ignores the preceding sentence of the same Regulation which reads:

" '*The disclaimer of a power is to be distinguished from the release or exercise of a power.*' (emphasis added)

"Sophia B. Fruth disclaimed her power of appointment, she did not release or exercise it."

Clearly, plaintiffs cannot walk both sides of the street. If the purported "disclaimer" is really a release it does not qualify for the deduction sought. If it is to qualify as a disclaimer, effective and binding under West Virginia law, it must meet the requirements set out in West Virginia Code Section 42–4–3.

In their reply brief plaintiffs argue still that Section 42–4–3 of the West Virginia Code does not apply to the disclaimer here involved. Plaintiffs assert that the word "beneficiary" which appears in the statute is really a synonym for the word "legatee," and a "legatee" is one to whom personal property is given under a will, and, therefore, that section of the Code only applies to disclaimers of real property and/or personal property, and that it does not apply to a disclaimer of a power of appointment. Plaintiffs assert that decedent's widow was disclaiming a power of appointment and, therefore Section 42–4–3 does not apply. As authority for their definitions of "legatee" and "devisee" plaintiffs rely on Hobbs Executor v. Brenneman, 94 W.Va. 320, 118 S.E. 546 (1923). It should be noted that the *Hobbs* case deals with the meaning of a residuary clause in a will, it does not deal with trusts or powers of appointment, and it does not offer a definition of "bequest." Furthermore, plaintiffs' Exhibit E, which is attached to the complaint and which is offered as a true copy of the "disclaimer" is itself entitled "Partial Disclaimer of Bequest." Plaintiffs' original brief refers to the "disclaimer" as a "Partial Disclaimer of Bequest." At any rate, property includes rights and powers. The owner or holder of a power of appointment has a property right in that power. Black's Law Dictionary 1382 (4th ed. 1951) refers to personal property as "In broad and general sense, everything that is the subject of ownership, not coming under denomination of real estate." Clearly decedent created the power of appointment by his will, and by his will bequeathed it to the life beneficiary of the trust. As such it was a bequest to a beneficiary who could have disclaimed it within the statutory period, but failing to do so, it vested in her.

Plaintiffs then assert that a disclaimer is in effect a quitclaim deed and cite Miller v. Estabrook, 273 F. 143 (4th Cir. 1921); Woodall v. Clark, 254 F. 526 (4th Cir. 1918); Wilson v. McCoy, 93 W.Va. 667, 117 S.E. 473 (1923); Fisher's Heirs v. Camp's Heirs, 26 W. Va. 576 (1885), all cases in which dis-

claimers were upheld as such. These cases, however, are all suits of ejectment. At common law ejectment came to be the usual method of trying titles to land. Black's Law Dictionary 607 (4th ed. 1951). By filing the disclaimers in these suits defendants relinquished and surrendered all claim to the land in controversy. Having disclaimed ownership of the contested property, their title could not be tried by an action of ejectment. Those disclaimers may have been essentially quitclaim deeds, but even if the present "disclaimer" was in effect a quitclaim deed and as such was binding it would be of little import. A quitclaim deed like a release may be binding indeed, but neither results in a deduction under Section 2055. In order to receive the benefit of a charitable deduction the bequest must flow from the decedent's estate. If a beneficiary executes a binding disclaimer, the bequest does not vest in her but passes directly from the estate to the charitable remainder. By executing a release or even a quitclaim deed, the beneficiary is bestowing the benefit upon the charitable remainder himself. In the latter case, no benefit passes from the decedent's estate to the charitable remainder, and the decedent's estate is therefore, not entitled to the deduction.

Such is the case here. Decedent's will failed to establish an ascertainable standard for the invasion of the principal from which the funds for the charity and cemetery were to come. Decedent's widow attempted to save the deduction by executing a "disclaimer," but the purported "disclaimer" did not qualify under West Virginia law and therefore no benefit passed from the estate to the charity or the cemetery. Plaintiffs have failed to establish qualification for the deduction they seek. Judgment, therefore, will be entered for defendant.

Counsel may prepare an appropriate order incorporating this memorandum opinion by reference therein.