*Decision will be entered under Rule 50.*

ESTATE OF HARRY C. JAECKER, MANUFACTURERS HANOVER TRUST COMPANY, HARRY C. JAECKER, JR., AND KATIE JAECKER DEXTER, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 824–69.   Filed April 27, 1972.

---

*Robert K. Richardson* and *D. Chase Troxell*, for the petitioners.

*Agatha J. Vorsanger*, for the respondent.

QUEALY, *Judge:* The respondent determined a deficiency in the estate tax due from the Estate of Harry C. Jaecker, deceased, in the amount of $2,150,208.62. Petitioners claim an overpayment of estate tax in the amount of $70,265.50. The sole issue for determination is whether the remainder interests in three trusts established by the will of the decedent qualified for a charitable deduction pursuant to section 2055 [1] where the trustees of each of the respective trusts were vested with broad discretionary investment and management powers.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference.

Harry C. Jaecker (hereinafter referred to as decedent) died on September 20, 1964. At the time of his death, he was a domiciliary of Westchester County, N.Y.

Manufacturers Hanover Trust Co. (hereinafter referred to as Manufacturers), Harry C. Jaecker, Jr., and Katie Jaecker Dexter are the duly appointed executors of the Estate of Harry C. Jaecker. In February 1969, at the time of the filing of the petition herein, the legal residences of Harry C. Jaecker, Jr., and Katie Jaecker Dexter were Franklin Lakes, N.J., and Scarsdale, N.Y., respectively; and the principal place of business of Manufacturers was New York, N.Y.

The Federal estate tax return, Form 706, was filed with the district director of internal revenue, Manhattan, New York.

In the last will and testament, executed on April 25, 1962, and admitted to probate on December 23, 1964, the decedent created three

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Respondent originally contended that the charitable bequests also failed to qualify under sec. 2055 on account of the discretion of the trustees to invade the corpus for the "care and comfort" of the surviving beneficiaries. In his reply brief, however, the respondent conceded that such uncertainty was cured by disclaimers filed by the beneficiaries.

trusts. Manufacturers, Katie Jaecker Dexter, and Harry C. Jaecker, Jr., were appointed trustees of each of the three trusts.

Under article Fourth of the will, the decedent directed that the sum of $250,000 be placed in trust and that the income therefrom be paid first to the decedent's wife, Christine Reichold Jaecker, during her lifetime, and thereafter equally during their lifetimes to Katie Jaecker Dexter and Harry C. Jaecker, Jr., and then wholly to the survivor. The decedent's wife, Christine Reichold Jaecker, predeceased him.

Under articles Fifth and Sixth of his will, the decedent directed that the rest, residue, and remainder of his estate be divided into two equal parts, and that one of such parts be placed in trust for the benefit of Katie Jaecker Dexter and that the remaining part be placed in trust for the benefit of Harry C. Jaecker, Jr., each to receive all net income from each trust during the terms of their natural lives.

Articles Fourth, Fifth, and Sixth of the will further provided that upon the death of the trust beneficiaries, the principal of each of the three trusts was to be divided into three equal parts and that each equal part be paid to Sloan-Kettering Institute For Cancer Research, Community Service Society of New York, and The Children's Aid Society, which, at all times relevant hereto, were charitable organizations of the type described in section 2055 of the Internal Revenue Code of 1954.

Pursuant to article Ninth of the will, the trustees of each of the three trusts were granted the powers, which, insofar as they are relevant to this proceeding, are as follows:

I give my executors and trustees, and any successor, the following powers, authority and discretion which may be exercised by them in either or both capacities as often as they may deem advisable without the necessity or any application to or approval by any Court:

To retain any property owned by me at my death and to receive, invest in and retain stock (whether common or preferred, except shares or interests in investment companies or investment trusts) bonds, securities, undivided interests in any real and personal property, any Common Trust Fund maintained by my corporate trustee, and any property, real or personal, foreign or domestic, whether or not wasting assets, without any duty to diversify and without any restriction placed upon fiduciaries by any present or future applicable law, rule of court or court decision.

\* \* \* \* \* \* \*

To determine whether or not to amortize from income, either in whole or in part, the premium at which any property may be purchased or acquired, or the depreciation on, or any expense in connection with, any property, real or personal; to discontinue any sinking fund at any time and distribute the same as income, in whole or in part; to pay from principal or income, or partly from each, any deficit from the operation of any improved or unimproved property, or any charge against the trust estate; to allocate to income or to principal, or partly to each, any dividend of whatever kind or nature, any property received in

exchange for any bond with arrears of interest or for any stock with cumulative dividend rights upon which any dividend may be in arrears, and any rent, royalty or payment received from any so-called wasting assets; and in making any allocation or charge to follow or depart from any rule or law pertaining thereto, except that no allocation shall be made to principal, or charge made to income which would constitute an unlawful accumulation of income.

To allocate to income and distribute all dividends declared upon stock at or before my death and payable to stockholders at a date thereafter (except dividends otherwise allocated to principal), and all rents accrued upon real property, and all interest accrued upon securities or obligations, respectively, at my death.

In all matters to administer and invest the estate as fully and freely as an individual owner might do, without any restrictions to which fiduciaries are ordinarily subject, except the duty to act in good faith and with reasonable care.

On July 29, 1965, and August 17, 1965, Katie Jaecker Dexter and Harry C. Jaecker, Jr., respectively, each executed a document entitled "Disclaimers" in which it is stated that they released (1) all rights which they would otherwise hold to have the powers granted to the trustees under decedent's will, exercised on their behalf in such a manner as to result in their receiving any amounts of income in excess of the amounts which they would be entitled to receive under New York law if such powers had not been granted in the will; and (2) all amounts of income in excess of the amounts they would have been entitled to receive under New York law if such powers had not been granted in the will. In the disclaimers executed by Katie Jaecker Dexter and Harry C. Jaecker, Jr., each of them also stated that it was her and his intent and desire that the principal of the trusts pass to the charitable remaindermen free from the rights she and he were relinquishing. These disclaimers were filed with and recorded by the Surrogate's Court of Westchester County, N.Y., on September 1, 1965.

## OPINION

In this case, the decedent, by will, created certain trusts. Under article Fourth of his will, the decedent bequeathed $250,000 in trust and directed that the net income thereof be paid to his wife for life. Upon her death, the net income of the trust was payable in equal shares to the decedent's two children for their joint lives and then wholly to the survivor for life, with remainder over at the death of the survivor to named charitable organizations in equal shares. The decedent bequeathed the residue of his estate to two trusts, one for the benefit of his daughter and the other for the benefit of his son. Under the terms of each of these trusts, the named beneficiary was to receive the net income for life with the remainder in each instance to be paid to named charitable organizations. Manufacturers, the decedent's son, and the decedent's daughter were named as trustees of each of the three trusts.

Pursuant to the will, the trustees were granted broad discretionary powers in the investment of and accounting for the principal and income of the trusts. The trust instrument vested in the trustees the power (a) to invest in any and all types of property, including wasting assets, without duty to diversify and without regard to any restrictions imposed on fiduciaries by law or by any "rule of court or court decision"; (b) to allocate to principal or to income, or partially to each, "any dividend of whatever kind and nature, any property received in exchange for any bond with arrears of interest" or for any stock with cumulative dividend rights upon which any dividend was in arrears, and "any rent, royalty or payment received from wasting assets"; (c) to decide whether to amortize from income, in whole or in part, any premium at which any property was purchased or acquired, or the depreciation on, or any expense in connection with, any real or personal property; (d) to discontinue any sinking fund at any time and to distribute it as income either in whole or in part; and (e) to pay from either principal or income any deficit from the operation of any property or any charge against the trust estate. In addition, the decedent also provided that in making any allocation or charge, the trustees had the power "to follow or depart from any rule or law" pertaining to such allocation or charge except that no allocation or charge constituting an unlawful accumulation of income was to be made. Finally, the trustees were empowered "to administer and invest the estate as fully and freely as an individual owner might do, without any restrictions to which fiduciaries are ordinarily subject, except the duty to act in good faith and with reasonable care."

In 1965, the decedent's son and daughter executed certain disclaimers in regard to their respective life interests in the various trusts created by the decedent. Under the disclaimers, they renounced their rights under the trusts to have the investment and management powers exercised in a manner as to result in the receipt of income in excess of the amounts they would have been entitled to receive under New York law if such powers had not been granted in the will. They also disclaimed all amounts of income in excess of the amounts they would have been entitled to receive under New York law if such powers had not been granted in the will.[3]

Each disclaimer also provided that it was executed in order to comply with the provisions of section 2055. Furthermore, each was filed with and recorded by the Surrogate's Court of Westchester County, N.Y.

---

[3] Each beneficiary also filed a disclaimer with respect to the right to have the corpus of the respective trust invaded for his or her benefit. Respondent, as noted in fn. 2, has accepted the validity of these disclaimers for purposes of curing the uncertainty generated by said power of invasion. See Rev. Rul. 71–483, 1971–2 C.B. 337.

Section 2055 (a) (2) [4] establishes a deduction from a decedent's gross estate for the value of bequests, legacies, devises, or other transfers to or for the use of any charitable organization as defined therein. However, under section 20.2055–2(a), Estate Tax Regs., the actuarily computed value of the charitable remainder is deductible "only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest."

If the transfer is "dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible." Sec. 20.2055–2(b), Estate Tax Regs. Furthermore, if the "trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power." Sec. 20.2055–2(b), Estate Tax Regs.

Respondent contends that the discretionary powers granted to the trustees of each of the trusts in the instant case serve to defeat the deduction of the residuary gifts to charity under section 2055 because the remainders were not presently ascertainable. Petitioners argue to the contrary stressing that under New York law various limitations are placed upon the trustee's discretion so that the remainders are presently ascertainable. In the alternative, the petitioners argue that even if the broad investment and administrative and management powers discussed above do render the charitable re-

---

[4] SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.

(a) IN GENERAL.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

\*    \*    \*    \*    \*    \*    \*

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, \* \* \*

\*    \*    \*    \*    \*    \*    \*

For purposes of this subsection, the complete termination before the date prescribed for the filing of the estate tax return of a power to consume, invade or appropriate property for the benefit of an individual before such power has been exercised by reason of the death of such individual or for any other reason shall be considered and deemed to be an irrevocable disclaimer with the same full force and effect as though he had filed such irrevocable disclaimer.

mainders unascertainable, the remainders are still deductible because the beneficiaries filed disclaimers which were effective to qualify the charitable remainders in question for deductibility under section 2055.

As the parties point out in their briefs, in *Estate of Lillie MacMunn Stewart*, 52 T.C. 830 (1969), revd. 436 F. 2d 1281 (C.A. 3, 1971), this Court had occasion to consider provisions almost identical to the provisions upon which the respondent relies in the instant proceeding in a factual context which is virtually indistinguishable from the case now before us. This Court concluded that the charitable remainders were "presently ascertainable" and the claimed deduction was allowable under section 2055. On appeal, the U.S. Court of Appeals for the Third Circuit disagreed and reversed the decision of this Court, ruling that the administrative and investment powers granted to the trustees rendered the charitable remainders unascertainable and therefore nondeductible under section 2055. Regardless, however, of the outcome in the *Stewart* case,[5] the disclaimers executed by the life beneficiaries in the instant case effectively eliminated any uncertainty with respect to the charitable remainders.

With respect to disclaimers, section 20.2055-2(c), Estate Tax Regs., provides in pertinent part as follows:

(c) *Disclaimers.* The amount of a bequest, devise, or transfer, for which a deduction is allowable under section 2055, includes an interest which falls into the bequest, devise, or transfer as a result of either—

(1) A disclaimer of a bequest, devise, transfer, or power, if (i) the disclaimer is made within 15 months after the decedent's death (the period of time within which the estate tax return must be filed under section 6075) or within any extension of time for filing the return granted pursuant to section 6081, and (ii) the disclaimer is irrevocable at the time the deduction is allowed, or

(2) the complete termination of a power to consume, invade, or appropriate property for the benefit of an individual (whether the termination occurs by reason of the death of the individual, or otherwise) if the termination occurs (i) within the period described in subparagraph (1)(i) of this paragraph, and (ii) before the power has been exercised. Ordinarily, a disclaimer made by a person not under any legal disability will be considered irrevocable when filed with the probate court. A disclaimer is a complete and unqualified refusal to accept the rights to which one is entitled. Thus, if a beneficiary uses these rights for his own purposes, as by receiving a consideration for his formal disclaimer, he has not refused the rights to which he was entitled. There can be no disclaimer after an acceptance of these rights, expressly or impliedly. * * *

In the first instance, we must determine whether the disclaimers filed herein were valid under the laws of the State of New York. *Brodhag* v. *United States*, 319 F. Supp. 747 (S.D. W.Va. 1970). If the disclaimers are valid under New York law, the filing of the disclaimers with the appropriate court meets the standards prescribed in the statute as interpreted by section 20.2055-2(c), Estate Tax Regs.

---

[5] Cf. *Estate of George I. Speer*, 57 T.C. 804 (1972).

The respondent does not challenge the validity of the disclaimers filed with respect to the power granted by the trust provisions of the decedent's will to the trustees to invade the corpus specifically for the "care and comfort" of the surviving beneficiaries. However, with respect to the disclaimers made by the life beneficiaries with respect to the discretionary administrative and investment powers, the respondent contends that any interest derived from such powers was not subject to disclaimers under New York law. We disagree.

In order to be valid under New York law, those persons purporting to disclaim must have disclaimed a "severable" interest in the income or corpus of the trust. *In re Will of Carson*, 296 N.Y.S. 2d 726 (1968), 58 Misc. 2d 819; *In re Singer's Estate*, 224 N.Y.S. 2d 577.(N.Y. County Surr. Ct. 1962), 33 Misc. 2d 70; *In re Matthiessen's Will*, 23 N.Y.S. 2d 802 (1940), 175 Misc. 466; and *In re Trombly's Estate*, 255 N.Y. Supp. 93 (1931), 142 Misc. 255. Subject only to this requirement of severability, a partial disclaimer of a severable interest is valid. See, e.g., *Commissioner* v. *Macaulay's Estate*, 150 F. 2d 847 (C.A. 2, 1945), affirming 3 T.C. 350 (1944) ; *In re Nicholas' Will*, 126 N.Y.S. 2d 277 (Suffolk County Surr. Ct. 1953), 204 Misc. 965, affd. 134 N.Y.S. 2d 809 (1954), 284 App. Div. 971; and *In re Merritt's Estate*, 140 N.Y. Supp. 13 (1913), 155 App. Div. 228. See also *In re Clarkson's Estate*, 244 N.Y. Supp. 470 (1930), 137 Misc. 741, citing with approval *In re Merritt's Estate, supra*.

The beneficiaries in this case clearly attempted to disclaim a portion of a severable gift. In essence, the disclaimers by the beneficiaries of their right to receive any amount of income in excess of the amount they would have been entitled to receive under New York law if the broad administrative powers had not been granted were complete renunciations of a portion of the amounts of income to which they would have been entitled to under the trusts. Such a partial renunciation has been accepted as valid under the Federal standards set out above. See *Commissioner* v. *Macaulay's Estate, supra.* The courts of New York will also accept and hold such a disclaimer binding and irrevocable. See *In re Johanna Ryan*, N.Y.L.J. April 19, 1969, p. 18:3 (Kings County Surr. Ct.). See also *In re Nicholas' Will, supra*, and *In re Merritt's Estate, supra.*

In the case of *In re Johanna Ryan, supra*, the trust instrument authorized the trustee to treat as income and not as return of capital all dividends and distributions from mining stocks and other wasting assets. The respondent determined that because of this general clause, the charitable remainder created by the trust was not "presently ascertainable." As a consequence of such unascertainability, the respondent concluded that the "charitable remainder deduction" was not available to the estate. The Surrogate's Court held that the amount of the chari-

174

table remainder was ascertainable despite the general clause. The court further held that disclaimers filed by the life beneficiaries renouncing any right to receive as income any distribution of capital from missing or wasting assets were sufficient. Such disclaimers were viewed by the court as "effective to destroy any possible rights or powers of the persons executing same to receive any distribution as income lawfully or validly allocable to principal."

On the basis of these considerations, we conclude that the disclaimers executed by the life beneficiaries herein, whereby they disclaimed all rights which they would have otherwise held to have the powers granted to the trustees under decedent's will exercised in such a manner as would have resulted in their receiving any amounts of income in excess of the amounts which they would have been entitled to receive under New York law if such powers had not been granted in the will and all amounts of income in excess of the amounts they would have received under New York law if such powers had not been granted in the will, were valid and irrevocable under New York law. Thus, we hold that such disclaimers were irrevocable and therefore valid for purposes of section 2055. The disclaimers effectively eliminated any uncertainty with respect to the ascertainability of the charitable remainders involved herein, and they "fall" into the bequest to the charity within the meaning of section 2055 thereby qualifying for the charitable deduction established by that section. *Estate of James M. Schoonmaker, Jr.*, 6 T.C. 404 (1946).

*Decision will be entered under Rule 50.*