ESTATE OF JOHANNA RYAN, A.K.A. JANE RYAN, DECEASED, WILLIAM J. O'DONNELL, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6108–72.    Filed April 8, 1974.

*Barnabas B. B. Breed* and *William J. O'Donnell*, for the petitioner. *Richard M. Campbell*, for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency of $274.42 in petitioner's Federal estate tax. Petitioner has claimed an overpayment of $8,809.53 as to such tax. The only issue for our decision is whether petitioner, despite having failed to timely file a Federal estate tax return, may nonetheless elect alternate valuation date treatment for the estate under section 2032, I.R.C. 1954.[1]

All the facts have been stipulated and they are so found.

Johanna Ryan (decedent) died on March 15, 1967. The estate's executor, William J. O'Donnell (petitioner), filed the estate's Federal estate tax return on July 23, 1969, with the district director of internal revenue, Brooklyn, New York. At the date the petition herein was filed, petitioner's residence was New York, N.Y.

---

[1] All section references are to the Internal Revenue Code of 1954, as it applied to the years involved in the instant case.

In her will decedent had set up a trust, the remainder interest of which was to pass to certain specified charities. By letter dated June 30, 1967, petitioner requested the Director of the Tax Rulings Division of the Internal Revenue Service to issue an actuarial remainder factor in order that he might compute the value of such trust remainder for charitable deduction purposes. On October 5, 1967, Ira H. Hansen (Hansen), Chief of the Estate and Gift Tax Branch of the Internal Revenue Service, wrote to petitioner advising him that because of a certain wasting assets provision in the will no charitable deduction would be allowed to the estate for the value of the remainder interest passing to charities. Such provision in the will, according to Hansen, appeared to permit the fiduciary under the trust to allocate or divert principal received from wasting assets to income, thereby making it impossible to tell what portion of the trust principal would be consumed by the income beneficiary during the term of the trust. Because Hansen so viewed the trust remainder, he did not compute for petitioner the actuarial remainder factor requested.

On May 22, 1968, petitioner attended a conference in Washington, D.C., with Hansen and other members of his staff including Walter Halish (Halish) in order to discuss the Service's opposition to the charitable deduction. Hansen and Halish, however, refused to revoke the above-described letter ruling of October 5, 1967. On May 24, 1968, Halish telephoned petitioner and advised him that the Service would withdraw its opposition to the charitable remainder deduction on two conditions: first, that the life income beneficiaries and fiduciary file in the Surrogate's Court of Kings County, New York, disclaimers of all rights relating to the exercise of any power to allocate or divert principal in accordance with the wasting assets provision; and second, that all such disclaimers be approved by a decree of that court.

On May 27, 1968, petitioner requested the district director in Brooklyn, New York, to grant a 6-month extension of the time in which petitioner would have to file an estate tax return. Without such extension, petitioner would have had to file a return for the estate by June 15, 1968, which was the date 15 months after decedent's death.[2] In his request, petitioner explained:

Since it will take an appreciable amount of time to obtain court approval of said disclaimer and since under Treasury Regulations 20.2055–2(c) the disclaimer must be filed within the time provided for the filing of the estate tax return or any extension thereof, the undersigned hereby requests a six month extension to perfect the filing of the disclaimer and the transmittal of a certified copy of the court's decree approving the same to the Internal Revenue Service

---

[2] For decedents dying after Dec. 31, 1970, the filing time for the estate tax return is 9 months from date of death. Sec. 6075(a) ; Pub. L. 91–614, sec. 101 (b) and (j) (Dec. 31, 1970).

in Washington to permit the withdrawal of Mr. Hansen's letter to the undersigned dated October 5, 1967.

Petitioner's request was granted by the Internal Revenue Service on June 5, 1968, and he was given until December 15, 1968, to file the estate's return.

On June 11, 1968, disclaimers were duly executed and filed in the Surrogate's Court of Kings County, New York, and petitioner subsequently commenced a proceeding in said court for a ruling on the validity and effect of the disclaimers and the validity of the wasting assets provision in the will.

Petitioner, on November 18, 1968, requested the district director in Brooklyn, New York, to grant a second 6-month extension of time in which to file the estate tax return. In this request, petitioner stated:

A proceeding has been instituted in the Surrogate's Court of Kings County to obtain court approval of the Disclaimer described in said letter and jurisdiction is expected to be completed within the next two weeks.

The decision in respect of said application cannot be reasonably expected prior to the extension date granted by your office to December 15, 1968. I therefore request an additional extension of time to file the return to and including June 15, 1969.

This request for a second extension was denied on December 9, 1968, with the Service instructing petitioner to file the return "as soon as possible with an affidavit explaining the reason for the late filing." Petitioner, however, failed to file the estate's return by December 15, 1968. On December 27, 1968, petitioner wrote to respondent explaining why he had not filed the return on time. In particular, he stated that he would not file a return until the Surrogate's Court in New York ruled on the validity of the above-described disclaimers:

In view of the fact that approval of said disclaimer has not been forthcoming from the court, the undersigned, as above stated, is of the opinion that the filing of the return before the decision of the court may jeopardize the legal position of the estate in respect of the charitable remainder interest deduction and it is for this reason that the return was not and cannot be filed until such decision is handed down.

On April 9, 1969, the Surrogate's Court of Kings County finally rendered its decision approving the validity and effectiveness of the disclaimers. Upon being advised of the court's ruling by petitioner, respondent, on June 16, 1969, withdrew his opposition to the charitable remainder deduction, and supplied petitioner with the previously requested actuarial factor.

On July 23, 1969, petitioner filed the estate's Federal estate tax return, and elected thereon for alternate valuation date treatment under section 2032. In his statutory notice of deficiency, respondent

determined that the estate was not entitled to elect the alternate valuation date option because of petitioner's late filing of the estate's return.

## OPINION

Petitioner, the executor of the Estate of Johanna Ryan, was told by respondent that the estate would be given no charitable deduction for the remainder interest of a particular trust unless petitioner obtained from the income beneficiaries and trustee irrevocable disclaimers of certain powers to deplete the principal of such trust. Respondent also made it a condition to withdrawal of his opposition to the deduction that petitioner obtain a ruling on the validity of such disclaimer from the Surrogate's Court in New York. Under section 2055, if a disclaimer is required in order that a particular legacy qualify as a charitable deduction, such disclaimer has to be made irrevocably before the expiration of the period for the filing of the estate's Federal estate tax return. Respondent's regulations further provide that "Ordinarily, a disclaimer made by a person not under any legal disability will be considered irrevocable when filed with the probate court." Sec. 20.2055–2(c)(2), Estate Tax Regs.

Petitioner apparently acquiesced in respondent's demands that he obtain irrevocable disclaimers. Although the disclaimers were filed with the Surrogate's Court well within the extended period allowed for the filing of the estate's return, petitioner failed to file the estate's return until approximately 7 months after the expiration of such period. Because of such late filing, respondent refused to accept petitioner's election of alternate valuation date treatment, relying in his rejection on section 2032(c):

(c) TIME OF ELECTION.—The election [of alternate valuation treatment] provided for in this section shall be exercised by the executor on his return if filed within the time prescribed by law or before the expiration of any extension of time granted pursuant to law for the filing of the return.

Petitioner, pointing to what he considers are unfair and arbitrary actions on respondent's part, contends that respondent should not be allowed to interpose section 2032(c) in the instant case. We cannot agree with any of petitioner's arguments, and hold that respondent was correct in disallowing for the estate alternate valuation date treatment.

Petitioner first argues that respondent should be estopped from denying alternate valuation date treatment. It is his position that because respondent erroneously refused to withdraw his letter ruling of October 5, 1967, until the Surrogate's Court had upheld the validity of the disclaimers, that petitioner was effectively prevented from filing the estate's return on time. In this position we find no merit.

It is elementary that before an estoppel can be raised, petitioner must demonstrate some type of misleading conduct on the part of the respondent upon which petitioner relied to his detriment. *Sugar Creek Coal & Mining Co.*, 31 B.T.A. 344, 347 (1934); *Staten Island Hygeia Ice & Cold S. Co.* v. *United States*, 85 F. 2d 68, 71 (C.A. 2, 1936); *Smale & Robinson, Inc.* v. *United States*, 123 F. Supp. 457, 463 (S.D. Cal. 1954); *Elizabeth Lewis Saigh*, 36 T.C. 395, 423 (1961). Here, we can make no finding of any such misleading conduct on respondent's part upon which petitioner could have relied to his detriment. Respondent, in the instant case, refused to withdraw his opposition to petitioner's claim of a charitable deduction until the Surrogate's Court had ruled on the validity of the required disclaimers. However, respondent never in any way suggested that the filing of the estate's return could be delayed until the court had so ruled. Indeed, in his refusal to allow an additional 6-month extension to petitioner for the filing of the return—a refusal dictated by section 6081 (a)[3]—respondent explicitly called on petitioner to file his return "as soon as possible."

Nor can we find any implication arising out of any of respondent's conduct or statements that petitioner would not be allowed any charitable deduction if he could not obtain approval of the disclaimer from the Surrogate's Court prior to filing of the estate's return. Indeed, petitioner, in his letter to respondent of May 13, 1969, specifically referred to section 20.2055-2(c), Estate Tax Regs., as requiring only that irrevocable disclaimers be filed with the Surrogate's Court before the return was due in order that such disclaimer might enable the estate to gain a charitable deduction under section 2055. Petitioner does not even contend that respondent led him to believe that the disclaimer would only be considered irrevocable as of the date when court approval was procured. It is clear to us, as it was clear to the parties, that the court's decree would judge the validity of the disclaimers as and when made. Once court approval was obtained, the disclaimers would have been considered valid and irrevocable as of the date when they were originally filed with the Surrogate's Court—a filing which was actually accomplished well within the time allowed by the Code.

It is clear from the correspondence that petitioner very much wanted to procure from respondent a favorable ruling on the charitable deduction before he filed the estate's return. This, however, was

---

[3] SEC. 6081. EXTENSION OF TIME FOR FILING RETURNS.

(a) GENERAL RULE.—The Secretary or his delegate may grant a reasonable extension of time for filing any return, declaration, statement, or other document required by this title or by regulations. Except in the case of taxpayers who are abroad, no such extension shall be for more than 6 months.

petitioner's own private wish—and one clearly insufficient to successfully raise an estoppel against the respondent.

Petitioner also argues that respondent treated him in an arbitrary and discriminatory manner by withdrawing his opposition to the estate's charitable deduction only after the Surrogate's Court had approved the disclaimers. Petitioner points out that section 20.2055-2 (c), Estate Tax Regs., clearly provides that, ordinarily, a disclaimer will be considered irrevocable, as required by section 2055, when such is filed with the Probate Court. While there may be validity in petitioner's assertion (see *Harry C. Jaecker*, 58 T.C. 166, 173-174 (1972), and New York cases cited therein), we do not see why his dispute with respondent should enable him to disregard a filing provision in the Code. It is common for disputes to arise between taxpayers and respondent as to the handling of a specific transaction. If a taxpayer remains unsatisfied with the treatment afforded him by respondent, his remedy is to seek judicial review of the matter. From petitioner's presence before us, it is clear that he is aware of such ordinary judicial remedies, and his own action, of simply refusing to timely file the estate's return, cannot be justified.

Petitioner urges that he would have prejudiced the estate's position if he had filed the return prior to receiving approval from the Surrogate's Court. He points out that he would have had to attach to the return respondent's letter ruling denying the charitable deduction to the estate. We fail to see how a timely filing would have in any way prejudiced petitioner. The ruling petitioner refers to refused to approve a charitable deduction for the remainder interest of a trust established under the decedent's will. However, such ruling did not in any way purport to judge the validity and effect of any possible disclaimers petitioner might procure. It is clear, under section 2055, and respondent's regulations interpreting that section, that the procurement of disclaimers would have introduced a totally new and very relevant fact into petitioner's tax situation.

Petitioner, in fact, procured disclaimers within the period allowed by section 2055. And, while respondent refused to withdraw his opposition until the Surrogate's Court had approved the disclaimers, it is clear that petitioner should have nonetheless filed his return within the required time period. *Estate of Frank Duttenhofer*, 49 T.C. 200, 206-207 (1967), affd. 410 F. 2d 302 (C.A. 6, 1969). Had petitioner so filed, we suspect that respondent, as he did in the instant case upon learning of the approval of the Surrogate's Court, would have withdrawn his opposition to the deduction. Had he not, petitioner could have pursued available judicial remedies.

As we mentioned above, it is not uncommon for taxpayers and the respondent to disagree on matters before a return is due. In the case of estate tax returns, when such dispute might be resolved by the procurement of additional information or by new circumstances, the regulations provide a clear and reasonable solution:

(c) A return as complete as possible must be filed before the expiration of the extension period granted. The return thus filed will be the return required by section 6018(a) and any tax shown thereon will be the "amount determined by the executor as the tax" referred to in section 6161(a)(2), or the "amount shown as the tax by the taxpayer upon his return" referred to in section 6211(a)(1) (A). The return cannot be amended after the expiration of the extension period although *supplemental information may subsequently be filed that may result in a finally determined tax different from the amount shown as the tax by the executor on the return.* * * * [Sec. 20.6081-1(c), Estate Tax Regs.; emphasis supplied.]

Clearly, petitioner should have timely filed and then sought a change in respondent's position after the ruling of the Surrogate's Court. *Estate of Frank Duttenhofer,* 49 T.C. at 206–207. Instead petitioner unilaterally imposed a condition on the filing of the return: that respondent first consent to the withdrawal of his letter ruling. Such was improper on petitioner's part, and we cannot countenance his actions.

In conclusion, we find that petitioner's decision not to timely file an estate tax return was entirely of his own making, uninduced by any unfair conduct on the part of respondent. Since we have found such failure to have been both deliberate and totally unjustifiable, we need not reach the question of whether reasonable cause for failure to file a timely estate tax return may save for petitioner alternate valuation date treatment under section 2032.[4] We think petitioner in the instant case is in no better position than the petitioners in *Estate of Frederick L. Flinchbaugh,* 1 T.C. 653, 655 (1943), and *Estate of Henry S. Downe,* 2 T.C. 967, 970–971 (1943), who, apparently by mistake, or for other unexplained reasons, failed to file timely Federal estate tax returns, and were thus denied the alternate valuation date option. We hold that petitioner, having unjustifiably failed to file a timely estate tax return, is precluded by section 2032(c) from electing alternate valuation date treatment. Cf. *Rosenfield* v. *United States,* 156 F. Supp. 780, 783–784 (E.D. Pa. 1957), affirmed per curiam 254 F. 2d 940 (C.A. 3, 1958), certiorari denied 358 U.S. 833 (1958).

*Decision will be entered for the respondent.*

---

[4] Two divisions of this Court have considered this issue and held that the option to elect alternate valuation date treatment is lost even though reasonable cause for failing to file a timely estate tax return is demonstrated. *Estate of Fred B. Fisk,* 11 T.C.M. 77, 78 (1952), reversed on other grounds 203 F. 2d 358 (C.A. 6, 1953); *Estate of Norma S. Bradley,* T.C. Memo. 1974–17, 33 T.C.M. 70, 71–72 (1974).