115 T.C. No. 10


UNITED STATES TAX COURT


ESTATE OF EDWARD H. EDDY, DECEASED,
NATIONAL CITY BANK, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2735-99.                    Filed August 16, 2000.


     The executor filed the Federal estate tax return
in this case more than 18 months after the time
prescribed by law (including extensions) for filing the
return.  The value of all property included in the
gross estate was reported on the return as of the sec.
2032(a), I.R.C., alternate valuation date.  R
determined that decedent's gross estate must be valued
as of the date of decedent's death, because the
executor's alternate valuation election was invalid.
Furthermore, R determined that the estate is liable for
the addition to tax under sec. 6651(a), I.R.C., for the
failure to file a timely return.

     <u>Held</u>, the estate must value all property included
in the gross estate as of the date of decedent's death
because the executor made the alternate valuation
election more than 1 year after the time prescribed by
law (including extensions) for filing the Federal
estate tax return.  See sec. 2032(d)(2), I.R.C.

*Held*, *further*, the estate is liable for the addition to tax for the failure to file a timely estate tax return.


Carl Wells, for petitioner.

Carol A. Szczepanik, for respondent.


OPINION


PARR, Judge:  Respondent determined a deficiency of $421,214 in the estate's Federal estate tax and an addition to tax of $58,450 for the failure to file the estate tax return timely.

After concessions,[1] the issues for decision are:  (1) Whether, despite the executor's failure to make the alternate valuation election pursuant to section 2032 within 1 year after the time prescribed by law (including extensions) for filing the Federal estate tax return, the value of the gross estate may be determined by valuing all the property included in the gross estate as of the alternate valuation date.[2]  We hold it may not.

_____

[1]Petitioner conceded that the adjusted taxable gifts reported on the estate's Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, should be increased by $56,100; that the taxable estate should be increased by $3,556 for a Federal income tax refund; and that the attorney's fees and executor's commissions claimed as a deduction on the return should be reduced from $200,089 to $146,281.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of
                                        (continued...)

(2) Whether the estate is liable for the section 6651 addition to tax for the failure to file the estate tax return timely. We hold it is.

## Background

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Edward H. Eddy (decedent), died testate on April 13, 1993, in Cuyahoga County, Ohio. At the time the petition in this case was filed, Douglas Eddy (Eddy) was the executor of the estate and resided at Bainbridge, Ohio.[3]

At the time of his death, decedent owned 237,352 shares of stock in Browning-Ferris Industries, Inc. (BFI), which represented approximately 0.014 percent of the BFI shares outstanding during 1993. Shares of BFI are traded on an established securities market.

The due date for filing the decedent's Federal estate tax return was January 13, 1994, 9 months after decedent's death. The return was not filed then. Instead, on the day before the

---

[2](...continued)
Practice and Procedure.

[3]Eddy died on Jan. 18, 2000. Item V, par. A, of decedent's will provided for the appointment of National City Bank as executor in the event that Eddy was unable or ceased to serve in this capacity. National City Bank (the bank) has been appointed the executor of the estate. The bank's address was Cleveland, Ohio, at the time of its appointment.

return was due, Carl Wells, preparer of the estate's return and counsel for petitioner herein, signed and submitted a Form 4768, Application for Extension of Time To File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes, requesting an extension for filing to July 13, 1994. A check for $2 million was submitted with the application.[4]

A note attached to the application stated that the executor was waiting for a "Major Securities Firm" to complete its valuation of the estate's "principal asset", and that the $2 million was payment of the estate's tax liability, which was estimated without regard to that valuation. The application was approved; however, the executor did not file the return before the time provided by the extended due date expired.

Eddy engaged a brokerage firm to provide its opinion of the

---

[4]The parties stipulated that the estate remitted $2 million "when Exhibit 1-J was filed." Exhibit 1-J is the estate's Form 706, United States Estate (and Generations-Skipping Transfer) Tax Return, filed on Jan. 19, 1996. However, Exhibit 3-J, which is the estate's Form 4768, Application for Extension of Time To File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes, shows that the estate remitted $2 million with the application. Furthermore, the Form 706 shows, and respondent accepts, that the estate remitted $2 million with the Form 4768.

While stipulations are not to be set aside lightly, we have broad discretion in determining whether to hold a party to a stipulation. See Blohm v. Commissioner, 994 F.2d 1542, 1553 (11th Cir. 1993), affg. T.C. Memo. 1991-636. The evidence in the record demonstrates that the stipulation is simply incorrect. We are not bound by stipulations of fact that appear contrary to the facts disclosed by the record. See Rule 91(e); Blohm v. Commissioner, supra. We, therefore, find as a fact that the estate remitted $2 million with its Form 4768, not with its later filed Form 706.

value of the estate's BFI shares.  Sometime before the extended due date, the brokerage firm informed the executor that it would not complete the valuation on time.  Another firm was engaged, and it completed the valuation on November 29, 1994.  The firm opined that to dispose of the estate's block of shares on the alternate valuation date, October 13, 1993, the estate would have had to accept 75 cents per share less than that day's mean trading price (the discount for blockage).[5]  The firm did not offer its opinion of the appropriate discount for blockage or the fair market value of the shares on the date of decedent's death.

On January 19, 1996, the executor filed the estate tax return, which reported the alternate value of all the assets included in the estate.  The estate reported $5,988,440 as the alternate value of the gross estate and showed $6,604,782 as the date-of-death value.  The estate reported $5,721,987 as the alternate value of the taxable estate, including $5,370,089 as the value of the BFI stock (reflecting the discount for blockage).

In the notice of deficiency, respondent allowed the 75-cent-per-share discount for the estate's BFI stock.  However, respondent determined that the estate must report the fair market value of all the assets as of the date of decedent's death,

---

[5]The total value of the discount for blockage is $178,014 (75 cent-per-share discount times 237,352 shares).

because the executor's election to value the property as of the alternate valuation date was untimely and therefore invalid.

Respondent determined that the date-of-death value of the taxable estate, without consideration of the issues conceded by petitioner, see supra note 1, is $6,399,230,[6] including $6,052,251 as the value of the BFI stock (reflecting the discount for blockage).

Petitioner asserts that Rev. Proc. 92-85, 1992-2 C.B. 490, and the regulations provide respondent discretionary authority to allow the executor to make an untimely election to use the alternate valuation date, and that the estate qualifies for the relief provided by the revenue procedure.

## Discussion

### Issue 1.  Whether the Executor May Elect Alternate Valuation Date Treatment for the Estate

In general, a decedent's gross estate is valued for Federal estate tax purposes as of the date of the decedent's death.  See sec. 2031(a).[7]  However, if the executor so elects, the value of the gross estate may be determined by valuing all the property

---

[6]Respondent's determination reflects the lower date-of-death value of the estate's other stocks ($4,919).

[7]SEC. 2031. DEFINITION OF GROSS ESTATE.

   (a) General.--The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

included in the gross estate as of an alternate valuation date, which is the earlier of the date on which the property is disposed of or the date 6 months after the decedent's death. See sec. 2032(a)(1) and (2).[8] The election to determine the value of the property on the alternate date must be made on the estate tax return, and the election may not be made if the return is filed more than 1 year after the time prescribed by law (including extensions) for filing the return. See sec. 2032(d)(1) and (2).[9]

The return in this case was due no later than July 13, 1994,

_____

[8]SEC. 2032. ALTERNATE VALUATION.

(a) General.--The value of the gross estate may be determined, if the executor so elects, by valuing all the property included in the gross estate as follows:

(1) In the case of property distributed, sold, exchanged, or otherwise disposed of, within 6 months after the decedent's death such property shall be valued as of the date of distribution, sale, exchange, or other disposition.

(2) In the case of property not distributed, sold, exchanged, or otherwise disposed of, within 6 months after the decedent's death such property shall be valued as of the date 6 months after the decedent's death.

[9]Sec. 2032(d) provides:

(1) In general.--The election provided for in this section shall be made by the executor on the return of the tax imposed by this chapter. Such election, once made, shall be irrevocable.

(2) Exception.--No election may be made under this section if such return is filed more than 1 year after the time prescribed by law (including extensions) for filing such return.

15 months after the date of decedent's death.  See sec. 6075(a) (estate tax return due 9 months after date of death); sec. 6081(a) (the Secretary may grant a reasonable extension of time for filing any return; such extension not to exceed 6 months, except in the case of taxpayers who are abroad); sec. 20.6081-1(a), Estate Tax Regs. ("unless the executor is abroad, the due date for filing the return under any extension granted by a district director or a director of a service center may not be later than 15 months * * * from the date of the decedent's death").  The estate tax return was filed on January 19, 1996-- more than 33 months after the date of decedent's death and more than 18 months after the extended due date to file the return.

Before the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, the election to use the alternate valuation date had to be exercised on a timely filed estate tax return (including extensions), or it was lost.[10]  See, e.g., Estate of Bradley v. Commissioner, 511 F.2d 527 (6th Cir. 1975), affg. T.C. Memo. 1974-17; Estate of Ryan v. Commissioner, 62 T.C. 4, 10 (1974); Estate of Downe v. Commissioner, 2 T.C. 967, 970-971 (1943); Estate of Dixon v. Commissioner, T.C. Memo. 1990-17;

---

[10]Sec. 2032(c), 1954 I.R.C. (as amended), provided:

(c) Time of Election.--The election provided for in this section shall be exercised by the executor on his return if filed within the time prescribed by law or before the expiration of any extension of time granted pursuant to law for the filing of the return.

Estate of Archer v. Commissioner, T.C. Memo. 1984-57. DEFRA amended section 2032(d),[11] to effect Congress' intent that "an election may be made on a late-filed return only if the return is filed within one year of the due date." H. Conf. Rept. 98-861, at 497 (1984), 1984-3 C.B. (Vol. 2) 1, 497; see supra note 9; see also sec. 301.9100-6T(b)(1), Temporary Proced. & Admin. Regs., 49 Fed. Reg. 35489 (Sept. 10, 1984) ("no election shall be allowed unless made on a return filed within one year of the due date (including extensions) of such return").

The opportunity to elect to value property of a decedent's estate as of a date after the decedent's death is one of "legislative grace" and therefore must be made in the manner and the time prescribed by Congress. Estate of Flinchbaugh v. Commissioner, 1 T.C. 653, 655 (1943). It is clear that the statute, the temporary regulation, and the legislative history all provide that the alternate valuation election may not be made later than 1 year after the due date (including extensions) of

---

[11]Sec. 1023(a) of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, 1030, added subsec. (c) to sec. 2032, and former subsec. (c) was redesignated subsec. (d). DEFRA sec. 1024(a), 98 Stat. 1030, designated the existing text of redesignated sec. 2032(d) as par. (1) and substituted "shall be made by the executor on the return of the tax imposed by this chapter" for "shall be exercised by the executor on his return if filed within the time prescribed by law or before the expiration of any extension of time granted pursuant to law for the filing of the return", added the sentence providing that an election, once made, is irrevocable, and added par. (2). See supra note 9. Sec. 2032(d)(2) is effective for the estates of decedents dying after July 18, 1984. See DEFRA sec. 1024(b)(1), 98 Stat. 1030.

the estate tax return.  Petitioner, however, asserts that respondent has discretionary authority under Rev. Proc. 92-85, 1992-2 C.B. 490,[12] to allow the executor to make an untimely election to use the alternate valuation date.  We disagree.

Rev. Proc. 92-85, supra, applies, inter alia, "to extensions of time when a statute provides that an election be made by the due date of the taxpayer's return or the due date of the taxpayer's return including extensions."[13]  However, the date of expiration of the 1-year period of grace after the "time prescribed by law (including extensions) for filing * * * [the estate tax] return" is not the due date of the taxpayer's return or the due date of the taxpayer's return including extensions.

---

[12]Rev. Proc. 92-85, 1992-2 C.B. 490, was amended by Rev. Proc. 93-28, 1993-2 C.B. 344.  These revenue procedures were made obsolete by secs. 301.9100-1T through 301.9100-3T, Temporary Proced. & Admin. Regs., 61 Fed. Reg. 33365 (June 27, 1996), which adopted and revised the standards of granting relief stated in Rev. Proc. 92-85, supra.  See T.D. 8680, 61 Fed. Reg. 33365, 33366 (June 27, 1996) (Explanation of Provisions).

The temporary regulations were effective for all requests for relief under consideration by the IRS on June 27, 1996, and for all requests for relief submitted on or after June 27, 1996. See sec. 301.9100-1T(h), Temporary Proced. & Admin. Regs., 61 Fed. Reg. 33368 (June 27, 1996).  Secs. 301.9100-1 through 301.9100-3, Proced. & Admin. Regs. (the final regulations), apply to all requests for an extension of time submitted to the IRS on or after the effective date, Dec. 31, 1997.  See sec. 301.9100-1(e), Proced. & Admin. Regs.  The final regulations adopted with no significant change the provisions of the temporary regulations (and Rev. Proc. 92-85, supra) relevant to the issue in the instant case.  See id.

[13]See also sec. 301.9100-1T(d), Temporary Proced. & Admin. Regs., 61 Fed. Reg. 33367 (June 27, 1996) (same); sec. 301.9100-1(a), Proced. & Admin. Regs. (same).

Thus, Rev. Proc. 92-85, supra, does not apply to the 1-year period of grace provided by section 2032(d)(2), during which time the alternate valuation election may be made.

Accordingly, we find that the executor's failure to make the alternate valuation election on a Federal estate tax return filed on or before the date that is 1 year after the time prescribed by law (including extensions) for filing the return precludes the election.

Issue 2.  Whether the Estate Is Liable for the Addition to Tax for the Failure To File Its Return Timely

Section 6651(a)(1) imposes an addition to tax for the failure to file a required return timely unless the failure is due to reasonable cause and not due to willful neglect. "Reasonable cause as applied in section 6651 has been defined as the 'exercise of ordinary business care and prudence.'"  Estate of Duttenhofer v. Commissioner, 49 T.C. 200, 204 (1967) (quoting Southeastern Fin. Co. v. Commissioner, 153 F.2d 205 (5th Cir. 1946), affg. 4 T.C. 1069 (1945)), affd. 410 F.2d 302 (6th Cir. 1969); see also sec. 301.6651-1(c)(1), Proced. & Admin. Regs. ("If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause.").

Whether the failure to file on time was due to reasonable cause is primarily a question of fact to be decided from all the circumstances in a particular case.  See Estate of Duttenhofer v.

Commissioner, supra.  Petitioner bears the burden of proving that the failure to file timely was both due to reasonable cause and not due to willful neglect.  See Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985).  The fact of submission of a case fully stipulated under Rule 122(a) does not alter the burden of proof, or the requirements otherwise applicable with respect to adducing proof, or the effect of failure of proof.  See Rule 122(b).

The estate tax return was filed more than 18 months after the extended due date.  Petitioner has not shown that the delinquent filing was due to reasonable cause.  Furthermore, we find the fact that the executor was waiting for an opinion of the size of the discount for blockage is not reasonable cause for the failure to file a timely return.  The record shows that both the value of the gross estate and the estate tax liability were less on the alternate valuation date than on the date of decedent's death without consideration of the discount for blockage.  See sec. 2032(c).  Moreover, the estate tax return was not filed until more than 1 year after the executor received the firm's valuation report.

It is clear that the executor should have filed the estate tax return on time, electing alternate valuation (and attaching whatever explanation was appropriate), continued to seek the necessary information, and then filed a supplemental return with

additional information that decreased the estate tax liability. See <u>Estate of Ryan v. Commissioner</u>, 62 T.C. 4, 10 (1974); <u>Estate of Archer v. Commissioner</u>, T.C. Memo. 1984-57; sec. 20.6081-1(c), Estate Tax Regs.  Accordingly, we find the estate is liable for the section 6651(a)(1) addition to tax as determined by respondent.

In reaching our holdings herein, we have considered each argument made by the parties and, to the extent not discussed above, find those arguments to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.