T.C. Summary Opinion 2003-43


UNITED STATES TAX COURT


DENNIS W. FARLEY, JR. AND JANICE J. FARLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7920-01S.                    Filed April 22, 2003.


Dennis W. Farley, Jr. and Janice J. Farley, pro se.

<u>Dennis R. Onnen</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered

_____

[1]   Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code in effect for the
years at issue.  Rule references are to the Tax Court Rules of
Practice and Procedure.

is not reviewable by any other court, and this opinion should not be cited as authority.

In the notice of deficiency, respondent determined the following deficiencies in Federal income taxes against petitioners for the years indicated:

| Year | Deficiency |
|------|-----------|
| 1995 | $6,713 |
| 1996 | 8,000 |
| 1997 | 8,200 |

The sole issue for decision is whether petitioners are liable for the 10-percent additional tax on early distributions from qualified retirement plans under section 72(t)(1) for the years at issue and, more particularly, whether the distributions in question constitute "part of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the employee" within the intent and meaning of section 72(t)(2)(A)(iv).[2]

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are made part hereof.

---

[2] Respondent also determined that a $17,125 loan to petitioners from one of their qualified plans during 1995 constituted a deemed distribution under sec. 72(p) and was also subject to the additional tax under sec. 72(t)(1). Petitioners did not challenge that adjustment at trial; consequently, the Court considers that adjustment as conceded by petitioners.

Petitioners' legal residence at the time the petition was filed was Albuquerque, New Mexico.

Dennis W. Farley, Jr. (petitioner) was born December 25, 1942. In January 1994, he retired from United Missouri Bank in Kansas City, where he had been employed for more than 31 years.[3] At the time of his retirement, petitioner was 52 years of age. Upon retirement, petitioner received lump-sum distributions from qualified pension and profit-sharing accounts totaling $274,610. These funds were timely rolled over into self-directed individual retirement accounts (IRA accounts) pursuant to section 402(c). During 1995, petitioner commenced receiving periodic distributions from his IRA accounts.

Petitioner calculated the amount of his periodic distributions by first calculating an amortized growth rate of his IRA accounts based on a life expectancy of 30.4 years. After determining the projected growth of the accounts over this period, petitioner concluded he could withdraw (or receive distributions) from his accounts of $80,040 annually. He rounded

---

[3] Paragraph 4 of the stipulation states that petitioner retired from United Missouri Bank in 1995. However, petitioner testified that the actual date was Jan. 1994. The Court is not bound by a stipulation of fact that appears contrary to the facts disclosed by the record. Rule 91(e); Blohm v. Commissioner, 994 F.2d 1542, 1553 (11th Cir. 1993), affg. T.C. Memo. 1991-636; Estate of Eddy v. Commissioner, 115 T.C. 135 (2000). The difference in the dates is not material to the issue in this case.

this figure to $80,000. The amortized growth rate petitioner used to determine the value of his accounts 30.4 years hence was 29 percent per year.[4] The sole purpose of this process was to determine the maximum amount that could be distributed to petitioner from his qualified plans that would avoid imposition of the 10-percent additional tax under section 72(t) and would satisfy the provisions of section 72(t)(2)(A)(iv).

Petitioner used the 29-percent annual growth rate by analyzing the performances of various mutual funds and their rates of return over a given period of years. From a group of 83 funds, he selected seven mutual funds in which he would invest his IRA account funds. Using rates of return for these funds that he obtained from the Internet, petitioner took the cumulative return of each of the seven funds, which he divided by the relevant number of years to arrive at that fund's average annual return. He used data dating back 5 years for five of the funds, 3 years for one fund, and 1 year for another fund. Petitioner then added up these averages and divided by seven, resulting in an overall average annual return of 34.65 percent

---

[4] At trial, petitioner introduced a schedule based on an assumed life expectancy of 27 years for purposes of calculating his periodic distribution amount. However, respondent pointed out, and petitioner did not dispute, that petitioner actually used a life expectancy factor of 30.4 years as set forth in Table V of sec. 1.72-9, Income Tax Regs. Respondent did not challenge petitioner's use of a life-expectancy factor of 30.4 years.

for the seven funds.  Petitioner reduced that figure to 29 percent to allow for a "margin of error".  He used 5-year rates of return, where available, even when a fund had been in existence longer because, as he stated: "I figured a five-year return was reasonable for my purposes, you know, simply because the markets change considerably over time."

Petitioner began making monthly withdrawals out of his qualified accounts based on these calculations.  He received distributions of $50,000 in 1995, $80,000 in 1996, and $82,000 in 1997.  Petitioner admitted that the 1997 distribution of $82,000 was in error, and he corrected that error by reducing his distribution to $78,000 the following year, which year is not before the Court.  In subsequent years, petitioner resumed his scheduled periodic distributions of $80,000 per year.

On their Federal income tax returns for 1995, 1996, and 1997, petitioners reported the periodic distributions as income. The deemed distribution of $17,125 in 1995 was also reported as income on their 1995 return.  Respondent thereafter determined that the distributions were subject to the 10-percent additional tax under section 72(t).

Petitioner contends that the additional tax is not owed because the distributions were "part of a series of substantially equally periodic payments (not less frequently than annually) made for the life (or life expectancy) of the employee or the

joint lives (or joint life expectancies) of such employee and his designated beneficiary." Sec. 72(t)(2)(A)(iv). Petitioners must prove they are not liable for the 10-percent additional tax. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).[5]

Section 72(t)(2)(A)(iv) does not provide how to determine or calculate a series of substantially equal periodic payments to qualify for the exception. However, the IRS has provided three permissible methods for calculating such a series. IRS Notice 89-25, Q&A-12, 1989-1 C.B. 662, 666. Petitioner chose the second of the three methods, known as the fixed amortization method. Rev. Rul. 2002-62, 2002-42 I.R.B. 710. The fixed amortization method involves amortizing a taxpayer's IRA account balance over the account owner's life expectancy at an interest rate that does not exceed a reasonable rate of interest on the date that payments commence. IRS Notice 89-25, Q&A-12, 1989-1 C.B. <u>supra</u> at 666. The parties agree that the fixed amortization method provided in IRS Notice 89-25 is a permissible way to calculate a series of substantially equal periodic payments.[6]

---

[5]     Sec. 7491, under certain circumstances, places the burden of proof on respondent with respect to a taxpayer's liability for taxes in court proceedings arising in connection with examinations commencing after July 22, 1998. In this case, the examination of petitioners' returns commenced before the effective date; therefore, the burden remains with petitioners.

[6]     Although the Court is not bound by IRS Notice 89-25, 1989-1 C.B. 662, its methodology will be applied based on the
(continued...)

Respondent determined that petitioner did not use a reasonable rate of interest in calculating the amortizable growth of his qualified plan accounts. Respondent also contends that, even if the interest growth rate used was reasonable, the $82,000 distribution in one year impermissibly modified a series of payments that were required to be substantially equal in order to escape the additional tax.

The fixed amortization method utilized by petitioner requires that a taxpayer use a reasonable rate of interest in calculating a schedule of substantially equal payments. Respondent argued that petitioner's rate of interest of 29 percent was not reasonable because of three "fallacies", summarized as follows: Petitioner miscalculated the average annual return of the seven funds,[7] high short-term returns cannot be sustained over a longer period, and past performance is not predictive of future performance. Rejecting petitioner's methodology, respondent recalculated the average annual returns of the seven funds used by petitioner. Respondent determined

[6](...continued)
agreement of the parties.

[7]     Respondent argued that, by taking the cumulative return of each fund and dividing it by the relevant number of years to arrive at an average annual return, petitioner ignored the effects of compounding and overstated each fund's rate of return.

that the funds in question had an average rate of return of 23.01 percent rather than the 34.65 percent claimed by petitioner.

Petitioner admitted at trial to having made the computational errors claimed by respondent in calculating the average rates of return.  However, he argued that he did not intend for the money in his IRA accounts to remain invested in those seven funds indefinitely.  Rather, he intended to maintain investments in funds that were performing to his satisfaction.  He stated:  "I don't leave the money in the same mutual fund all the time.  I move it to whoever is doing the best job at any given time.  Money is portable.  So I can take it out of fund A and put it in fund B."  He further explained:  "the idea is to stay on top of the situation enough so you move your money to the funds that are performing."  Petitioner also admitted that the funds he selected in 1995 did not all continue to earn a rate of return higher than 29 percent.  However, he argued that such a rate was still sustainable and gave current examples of high performance funds.  At trial, petitioner was invested in only one of the original seven funds considered in calculating the periodic withdrawal amount.  He attributed this to having followed the approach of moving money around when necessary to maximize his rate of return to try to attain the growth-rate percentage used in calculating the amount of allowable distribution that could be made each year.

The Court agrees with respondent that petitioner did not use a reasonable growth rate in calculating the periodic distributions. Neither party cited any case law directly on point that would establish a means by which a reasonable growth rate can be determined to calculate a series of substantially equal periodic payments within the meaning of section 72(t)(2)(A)(iv). However, with reference to the fixed amortization method, IRS Notice 89-25 cites one example that assumes that an interest rate of 8 percent is reasonable for a 50-year old individual with a life expectancy of 33.1. The record fails to persuade the Court that a 21-percent departure from this example is reasonable. Petitioner's age at the time of the first distribution was approximately 52, and his life expectancy was 30.4 years. These factors are comparable to the example in IRS Notice 89-25. The interest rate petitioner used differed significantly. In effect, his use of such a generous growth rate would allow premature distributions in contravention of the legislative purpose underlying the section 72(t) tax, namely, to discourage premature distributions from IRA's. Arnold v. Commissioner, 111 T.C. 250, 255 (1998). Although petitioner presented evidence to establish the basis upon which he arrived at the chosen growth rate, that evidence fails to establish that such a rate was "reasonable" within the intent and meaning of section 72(t)(2)(A)(iv).

Because petitioner's interest rate was not reasonable, the 10-percent additional tax is due on the periodic distributions. The Court finds it unnecessary to address respondent's alternative contention that the annual distributions to petitioner were not equal.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.