T.C. Summary Opinion 2003-121

UNITED STATES TAX COURT


BRUCE EDWARD KENNEDY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10013-01S.          Filed August 27, 2003.


Bruce Edward Kennedy, pro se.

<u>Richard J. Hassebrock</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not

_____

        [1]     Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

be cited as authority.

Respondent determined a deficiency of $4,529 in petitioner's Federal income tax for 2000. The sole issue for decision is whether petitioner is entitled to an earned income credit under section 32(a), based on whether his daughters, Bianca and Alexa, are qualifying children under section 32(c)(3). More specifically, the question is whether the daughters had the same principal place of abode with petitioner for more than one-half of the taxable year under section 32(c)(3)(A)(ii).[2]

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and are made part hereof. Petitioner's legal residence at the time the petition was filed was Cincinnati, Ohio.

Petitioner's son, Kyle W. Kennedy (Kyle), was born in 1985.

---

[2] On his Federal income tax return for 2000, petitioner claimed one dependency exemption for his son, Kyle Kennedy, and claimed the earned income credit based on two qualifying children: the son, Kyle Kennedy, and a daughter, Bianca Kennedy. Petitioner also claimed head-of-household filing status. In the notice of deficiency, respondent disallowed the dependency exemption for Kyle Kennedy, disallowed the earned income credit, and determined that petitioner's filing status was single rather than head-of-household. At trial, petitioner conceded his filing status was single and conceded that his son, Kyle, was not a qualifying child for purposes of the earned income credit. However, at trial, petitioner claimed that Bianca and another daughter, Alexa, were qualifying children for purposes of the earned income credit. Respondent, at trial, conceded that petitioner was entitled to the dependency exemption for Kyle and further conceded petitioner's entitlement to a child tax credit under sec. 24 with respect to Kyle (even though petitioner had not claimed a child tax credit on his 2000 return).

Kyle's mother is Lisa Marcum, whom petitioner never married. Petitioner also has two daughters, Bianca Kennedy (Bianca) and Alexa Kennedy (Alexa), who were 9 and 7 years old, respectively, during the year at issue. Bianca and Alexa's mother is Ayse Kennedy (Ms. Kennedy). Petitioner was married to Ayse Kennedy, but the two divorced prior to the year at issue. Petitioner and Ms. Kennedy shared custody of their daughters under a shared parenting arrangement. However, no divorce decree or custodial document was introduced into evidence.

During the year at issue, petitioner was self-employed in the catering business. He lived in a home owned by his fiancee, Michele Zorb, and contributed toward the expenses of maintaining the home. Ms. Kennedy was an overseas flight attendant for American Airlines.

In her occupation as a flight attendant, Ms. Kennedy traveled frequently. Her travel schedule changed from month to month. She often flew to South America on flights originating from airports in New York. Her "regular" route was Rio de Janeiro, Brazil. She also worked on flights to and from Sao Paolo, London, Bermuda, and other international destinations. To report for work from her home in Ohio, she would travel on standby status on various airlines to New York. She engaged in the same practice, in reverse, coming home from her flights. As a privilege of being a flight attendant, she was allowed this so-

called "nonrevenue travel" at no expense on American Airlines and for a nominal fee on other carriers. Her commuting was occasionally subject to flight delays due to weather, air traffic, available seats, and other factors. Ms. Kennedy also utilized her nonrevenue ticket privilege to travel recreationally and to purchase airline tickets for friends and family members.

As a general practice, Bianca and Alexa lived with their mother when she was not working; when Ms. Kennedy was working, they lived with petitioner. Petitioner and Ms. Kennedy observed this general practice as "the best thing for the kids." The arrangement also afforded Ms. Kennedy the flexibility she needed in her employment. Because Ms. Kennedy's work required overnight travel, Bianca and Alexa often spent several consecutive days during each month, including significant periods during the summer and on holidays, with petitioner or in his care.

There were exceptions to the girls' general practice of living with their father when Ms. Kennedy was working and with their mother when she was home. On occasion, the girls spent days or portions of days with petitioner, petitioner's parents, or other relatives even though Ms. Kennedy was not working, or with relatives other than petitioner when Ms. Kennedy was working. If petitioner was out of town when Ms. Kennedy left for a trip, the girls stayed at petitioner's home, where Ms. Zorb cared for them. Petitioner's parents lived in Aberdeen, Ohio,

approximately 60 miles from petitioner.

Petitioner owned a 1933 40-foot trawler, which he described as "an old wooden boat." The boat had sleeping quarters, and petitioner took the boat on the Ohio River for days at a time during the year at issue. Occasionally, his daughters joined him in spending time on the boat. Petitioner kept a boat log in the use of his boat.

As indicated supra note 2, on his 2000 return, petitioner claimed an earned income credit with respect to Kyle and Bianca. He did not claim Alexa as a qualifying child for this credit. In the notice of deficiency, respondent disallowed the earned income credit. At trial, petitioner contended he was entitled to the earned income credit with respect to Bianca and Alexa, rather than Bianca and Kyle, as the qualifying children.

Section 32(a) provides for an earned income credit in the case of an eligible individual. Section 32(c)(1)(A), in pertinent part, defines an "eligible individual" as an individual who has a qualifying child for the taxable year. Sec. 32(c)(1)(A)(i). A qualifying child is one who satisfies a relationship test, a residency test, an age test, and an identification requirement. See sec. 32(c)(3). Respondent conceded that the relationship, age, and identification requirements have been met with respect to petitioner's daughters. Respondent's position is that the residency test has

not been met, thus placing that question as the sole issue for the Court.[3]

The residency test requires that a qualifying child have "the same principal place of abode as the taxpayer for more than one-half" of the taxable year. Sec. 32(c)(3)(A)(ii). Principal place of abode is not defined in the provisions relating to the earned income credit. However, the provisions dealing with head-of-household filing status are analogous. H. Conf. Rept. 101-964, at 1037 (1990), 1991-2 C.B. 560, 564; sec. 2(b)(1); sec. 1.2-2(b) and (c), Income Tax Regs. In determining whether a household actually constitutes the home of the taxpayer or a principal place of abode of another person, the taxpayer and such other person "must occupy the household". Sec. 1.2-2(c)(1), Income Tax Regs. However, temporary absences from the household by the other person due to "special circumstances" are permitted. Id.

With respect to special circumstances, the applicable regulation provides:

> A nonpermanent failure to occupy the common abode by reason of illness, education, business, vacation, military service, or a custody agreement under which a child or stepchild is absent for less than six months in the taxable year of the taxpayer, shall be considered temporary absence due to

---

[3] The Court decides this case without regard to the burden of proof. Sec. 7491(a)(1); Rule 142(a); Higbee v. Commissioner, 116 T.C. 438 (2001).

special circumstances.  Such absence will not prevent the taxpayer from being considered as maintaining a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household, and (ii) the taxpayer continues to maintain such household or a substantially equivalent household in anticipation of such return.

Id.  The inquiry is fact-specific; to be considered a temporary absence due to special circumstances, the evidence must establish that the absence was in fact temporary within the meaning of the regulation.  Cf. Ruff v. Commissioner, 52 T.C. 576, 579 (1969); Wells v. Commissioner, T.C. Memo. 1986-516.  Moreover, the special circumstances or necessity of the absence must be a type intended by the statute.  Manning v. Commissioner, 72 T.C. 838, 840 (1979).  Special circumstances have been found to exist, and a taxpayer to be qualified for head-of-household status, where a child was away at a school but returned to reside with the parent when school was not in session.  Blair v. Commissioner, 63 T.C. 214 (1975); Byrd v. Commissioner, T.C. Memo. 1986-385.

Both petitioner and Ms. Kennedy provided a place of abode, or home, for Bianca and Alexa.  Since 2000 was a leap year, there were 366 days in that year.  Whoever provided the girls a home for more than 183 days, therefore, provided their principal place of abode for purposes of the earned income credit.  The parties stipulated to 122 days that neither Alexa nor Bianca Kennedy resided with their mother.  However, respondent urged the Court

to disregard a portion of that stipulation.  Rule 91(e) (the Court has broad discretion to disregard stipulations where contrary to facts disclosed by the record); Estate of Eddy v. Commissioner, 115 T.C. 135, 137 n.2 (2000).  At trial, respondent contended that the girls resided with Ms. Kennedy for 199 days during the 2000 tax year.  Petitioner contended that the girls lived with him for at least 191 days during 2000.[4]

The documentary evidence introduced at trial to establish where Bianca and Alexa resided during 2000 included the following:  (1) Ms. Kennedy's contemporaneous calendar with handwritten notations for the year at issue, which recorded when her daughters resided with her, her work schedule, and other personal events, but with a number of items redacted; (2) American Airlines records indicating Ms. Kennedy's travel schedule, flights on which she worked, her nonrevenue travel purchases, and layovers; (3) a contemporaneous calendar kept by petitioner's mother, Alice Kennedy, reflecting visits from Bianca and Alexa and other personal events; and (4) a contemporaneous boat log recording petitioner's use of his trawler, including passenger references.  Petitioner himself did not keep a year-long contemporaneous calendar.  On a number of dates in 2000, entries in these various contemporaneous records conflicted with

---

[4]    On brief, petitioner asserted that the girls lived with him for 196 days during that year.

respect to the whereabouts of the girls.  Some entries were conceded to be erroneous.  No one from American Airlines testified explaining and clarifying the airline records; thus, these records were of limited usefulness to the Court.[5]

Like the documentary evidence, and as might be expected in a case of this nature, the testimony at trial was conflicting. Three witnesses testified:  Ms. Kennedy, as to the girls' whereabouts for each day in 2000; petitioner, as to certain dates that were in dispute; and petitioner's mother, Alice Kennedy, as to her own calendar.  When compared with the documentary evidence, the Court finds some of the testimony to be inaccurate. The Court considers the witnesses to have been of relatively equal credibility.

Rather than relying on the stipulation or any single evidentiary source, the Court has considered the entire record as to the girls' presence on each day in 2000.  As to each contested period, the Court has reached a conclusion based on what the Court finds to be supported by a preponderance of the evidence. In calculating the days spent with petitioner, the Court

---

[5]     Petitioner attempted to rely on the records of Ms. Kennedy's nonrevenue ticket purchase to establish that she was traveling on certain contested dates.  However, as respondent pointed out, Ms. Kennedy purchased such tickets for family members and friends as well as for herself; thus, the records do not definitively establish her whereabouts.  At best, the nonrevenue ticket records help to corroborate the times Ms. Kennedy was working as a flight attendant.

considered such days that the girls spent with petitioner's parents and Ms. Zorb to count in petitioner's favor, as temporary absences within the meaning of the regulations. Sec. 1.2-2(c)(1), Income Tax Regs. On days that the girls spent part of their time with both parents, petitioner and Ms. Kennedy were each credited with one-half day, an approach sanctioned by both petitioner and respondent.

Despite these allowances, on this record, the Court holds that Bianca and Alexa Kennedy did not have the same principal place of abode with petitioner for more than one-half of the year. As between petitioner and Ms. Kennedy, the number of days each spent with their daughters was quite close. Although petitioner did provide a place of abode for Bianca and Alexa for a significant portion of 2000, that time period, in the Court's best judgment, did not exceed 183 days for that year. Therefore, the Court holds that the two girls were not qualifying children for purposes of section 32(a). Respondent is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.