T.C. Memo. 2011-1

UNITED STATES TAX COURT

JEFFREY L. AND SIMONE I. RAYDEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7468-08.                    Filed January 3, 2011.

        R determined a deficiency in income tax for
petitioners' 2004 tax year.  R claimed that only 43
percent of Ps' residence was used exclusively for
business while Ps assert that the applicable figure is
70 percent.

        <u>Held</u>:  Ps used no more than 43 percent of their
residence exclusively for business and are liable for
the deficiency to the extent herein decided.

<u>Adam L. Karp</u>, for petitioners.

<u>Nathan C. Johnston</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  Respondent determined that petitioners are liable for a Federal income tax deficiency of $19,740 for the 2004 tax year.  After concessions,[1] the only issue remaining is to determine the portion of petitioners' residence which was used exclusively on a regular basis as a principal place of business by Mr. Rayden during the 2004 tax year.[2]

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts, the supplemental stipulation of facts, and the accompanying exhibits are hereby incorporated by this reference. At the time they filed their petition, petitioners resided in California.

---

[1]At trial respondent conceded that any amount of mortgage interest and real estate taxes not allowed on Schedule C, Profit or Loss From Business, by the allocation effect of sec. 280A(c)(1) would be claimed on Schedule A, Itemized Deductions. Respondent also conceded that the rooms in petitioners' residence designated as the library and as the garage were used exclusively by petitioners to conduct business.  All other issues are computational and will be determined in the Rule 155 computations to be made in accordance with this opinion.  All section references are to the Internal Revenue Code of 1986, as amended and in effect for the tax year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]At trial respondent conceded that 43 percent of petitioners' house was used exclusively for business.  Petitioner contended at trial that the applicable figure is 71 percent and on brief that it is 70 percent.

Petitioner husband (petitioner) is the sole proprietor of InfoGen and Resource Direct.  Before 1997 petitioner conducted his business out of 8,000 square feet of commercial space until financial difficulties and family issues required petitioner to terminate the lease and move the business into his home. Petitioner's home consists of 7,272 square feet of living space, which includes the garage.[3]  During the tax year at issue, petitioner resided in this residence with his wife and daughter. Petitioner also has two sons who, during this period, attended college and lived away from home.

_____

[3]The parties stipulated that petitioners' home consists of 7,272 square feet of living space, which includes the garage; however, at trial petitioner testified that the home was about 8,500 square feet including the garage.  Petitioners' Exhibit 15-P actually attributes 8,321.625 square feet of the home to living space.  We note that the garage is approximately 1,102.5 square feet; perhaps the stipulation was incorrect and the 7,272 figure did not include the garage.

A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties.  Rule 91(e).  Courts do not lightly set aside stipulations of fact but may exercise broad discretion to determine whether to hold a party to a stipulation.  Blohm v. Commissioner, 994 F.2d 1542, 1553 (11th Cir. 1993), affg. T.C. Memo. 1991-636.  In instances where the stipulation is contrary to the record, "We are not bound by stipulations of fact that appear contrary to the facts disclosed by the record."  Estate of Eddy v. Commissioner, 115 T.C. 135, 137 n.4 (2000); see also Blohm v. Commissioner, supra at 1553.  However, to the extent possible, we adhere to the square footage stipulated.

Petitioners' two-story residence consists of 12 rooms. There is additional space in the area of the vestibule, hall, and staircase. There is also an attached three-car garage. Petitioner's family put the master bedroom and master bathroom to personal use. Petitioners' daughter used the room designated on Exhibit 15-P as bedroom 2, including the sitting area, bathroom, and closet, for personal purposes. Petitioners asserted at the trial that 10 percent of the use of bedroom 2 was for business. The room designated as the guest room consists of 283 square feet and was used by petitioner wife in connection with her travel agency business.

Petitioner and his family frequently ate out but used the kitchen some each week for eating meals and occasional cooking. The subcontractors who worked for petitioner's business in petitioner's home also used the kitchen for breaks and lunches. Petitioner's family used the service room for laundry. Petitioner explained that he used the den, with the adjoining bar and vestibule, to entertain family members one to two times a year. About three times a year petitioner and his family used the dining room for family dinners. Petitioner and petitioners' daughter occasionally had meals in the breakfast area, as its name would imply.

Petitioner and his family did not use the living room for personal purposes. On a rare occasion, someone other than a

business associate might walk through the room.  Otherwise, it was used only for business.  The maid's room was used for staging and preparing projects for petitioner's business and not for personal purposes.  Bedroom 3 was used as a graphic and video studio, and bedroom 4 was used as a programming and survey office.  Both of these bedrooms were used solely for business. The 186-square-foot hall area led only to bedrooms 3 and 4 and thus also was used only for business.  The garage comprised approximately 1,103 square feet of the first floor.  It was used primarily for storage and as a shop and studio.

Petitioners filed a Form 1040, U.S. Individual Income Tax Return, for the 2004 tax year.  The tax return included a Schedule C for petitioner's marketing consultant business with respect to which he claimed a rent expense of $90,646.  It also included a Schedule C for petitioner's Infogen computer software business with respect to which he claimed a rent expense of $84,515.  Petitioners also reported rental income of $175,161[4] on Schedule E, Supplemental Income and Loss, and claimed expenses of $131,739.

Respondent issued a notice of deficiency on December 31, 2007, determining a $19,740 deficiency in petitioners' income tax for 2004.  Petitioners filed a timely petition with this Court on

[4]This figure represents the sum of the rental deductions from both of the Schedules C.

March 28, 2008, denying liability for the deficiency.  A trial was held on June 17, 2009, in Los Angeles, California.

OPINION

Deductions are a matter of "legislative grace", and "a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); see also Rule 142(a).  As a general rule, section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  An expense is ordinary for purposes of this section if it is normal or customary within a particular trade, business, or industry.  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business.  Commissioner v. Heininger, 320 U.S. 467, 471 (1943).  Section 262, in contrast, precludes deduction of "personal, living, or family expenses."

Where the expense in question relates to property that is occupied by the taxpayer as a residence, section 280A(a) lays down the following general rule:  "in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."  However, an exception to this

general ban is found in section 280A(c)(1), which provides that section 280A(a) does not apply to an item of expense to the extent allocable to a portion of the taxpayer's residence which "is exclusively used on a regular basis" as the taxpayer's principal place of business.

There is no dispute that a portion of petitioners' home was used on a regular basis as the principal place of petitioner's business. We are, however, confronted with the fact-specific inquiry of whether certain rooms in petitioners' house were used exclusively for the business. The legislative history of section 280A dealing with exclusive use explains:

> Exclusive use of a portion of a taxpayer's dwelling unit means that the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business. The use of a portion of a dwelling unit for both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test. * * * [S. Rept. 94-938, at 148 (1976), 1976-3 C.B. (Vol. 3) 49, 186; H. Rept. 94-658, at 161 (1975), 1976-3 C.B. (Vol. 2) 695, 853; emphasis added.]

The Court in Hefti v. Commissioner, T.C. Memo. 1988-22, affd. without published opinion 894 F.2d 1340 (8th Cir. 1989), discussed this legislative history and observed that "Any personal use of a room or segregated area will preclude its use in computing depreciation or other allocable expenditures, unless some or all of the use of the room was for the storage of inventory."

Petitioner contends that 70-71 percent of his home was used exclusively and regularly for business during the 2004 tax year. As the Court did in Hefti, we find it implausible that the taxpayer and his family "had no social or personal life in any portion of the residence other than a few bedrooms and the kitchen." Id. During his testimony petitioner acknowledged a few occasional uses of other rooms for personal purposes during 2004. Nevertheless, because personal use was allegedly minimal compared with business use, petitioners contend that they should be allowed the claimed expense deduction. We appreciate petitioners' contention, but Congress has made it clear that this is not the law.

Respondent conceded that petitioner used the library and the garage exclusively for business. We also find that petitioner used the living room exclusively for business. Although petitioner's own exhibit claimed that the business used the living room only 95 percent of the time, at trial he credibly explained that "The only reason I put down 95 percent is that somebody who would be visiting could have possibly walked in [or through] that area and walked out."

This Court has previously held that the mere nonbusiness passage from one room to the next can be classified as a de minimis personal use of the room and will not disqualify the room from the exclusivity requirement of section 280A(c)(1). See

Lind v. Commissioner, T.C. Memo. 1985-490 ("That petitioners and their family members may have occasionally walked through the garage does not violate the exclusive business use rule."); Hughes v. Commissioner, T.C. Memo. 1981-140 ("Petitioner's incidental use of the closet to walk to and from his bathroom was de minimis.").

We also find credible petitioner's testimony that the maid's room and bedrooms 3 and 4 were used exclusively for business. See Thalacker v. Commissioner, T.C. Memo. 1984-488 (upholding a home business deduction on the basis of a taxpayer's credible testimony). Petitioner explained that the maid's room was 100 percent used "in the business for staging and preparing projects." He also explained that bedroom 3 was used for graphic design and as a video design studio and that bedroom 4 was used for programming, customer service, and surveys. Petitioner also proffered photographs of bedrooms 3 and 4 depicting their business use. Although, as respondent pointed out at trial, these photographs, necessarily limited to two dimensions, depict only one side of the room, we find them to be reliable evidence corroborating petitioner's testimony regarding the business use of these two rooms.

Because we find that bedrooms 3 and 4 were used exclusively for business, we also find that the hall area, which leads only to those two rooms, was also used exclusively for business. The

table below summarizes the rooms in petitioners' residence that were used exclusively and regularly for petitioner's business in 2004 and their total area in square feet.[5]

| Room | Square Feet |
|---|---|
| Library | 328.5 |
| Garage | 1,102.5 |
| Living room | 405.0 |
| Maid's room | 364.0 |
| Bedroom 3 | 444.0 |
| Bedroom 4 | 392.0 |
| Hallway to 3 & 4 | 186.0 |
| Total | 3,222.0 |

Using these figures it appears that petitioner used 3,222 square feet for his business in 2004, which is 44.3 percent of the total area of petitioners' house. We note that this percentage was determined using the stipulated 7,272 total square feet; had we used the total square footage from petitioners' Exhibit 15-P of 8,321.625, the percentage of his business use would have been 38.7 percent of petitioners' home. Respondent has done an excellent job of applying the law to the facts. Indeed, respondent was more generous then this Court would have been had we, as we would be inclined to do, used the total square footage from petitioners' Exhibit 15-P. We therefore find that,

---

[5]The square footage per room was determined by using petitioners' Exhibit 15-P.

as contended by respondent, petitioner used 43 percent of the home exclusively for business. As we explain below, the remaining rooms were not exclusively used for business and the expenses apportionable to their use do not qualify as deductible under section 280A(c)(1).

Although petitioner first explained that he did not eat in the breakfast room, in response to a question by the Court he conceded that on occasion he or his family may have eaten in the breakfast area. Petitioner also did not use the den, vestibule, and adjoining bar exclusively for business. Petitioner explained that "maybe one or two times a year, [the area] was used sometimes by family that were visiting". We do not regard as de minimis this personal use of the room by visiting family. "Exclusive use" is narrowly construed, as discussed in the legislative history of section 280A above. This means that "'the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business.'" Culp v. Commissioner, T.C. Memo. 1993-270 (quoting Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987)).

Petitioner also did not use the dining room exclusively for business when his family was visiting. Petitioner testified that "one or two nights a year" when his sons were in town they would have a family dinner in the dining room. Petitioner is not entitled to a deduction for items of expense apportionable to

these rooms.  By his own admission, normal household activities took place in those rooms.  See <u>Langer v. Commissioner</u>, 980 F.2d 1198, 1199 (8th Cir. 1992) (disallowing a business expense deduction for a portion of the home in which household activities also took place), affg. T.C. Memo. 1990-268.

In conclusion, petitioner used 43 percent of the house's total area exclusively for business and may claim business expense deductions prorated accordingly.  He is not entitled to a Schedule C deduction in connection with the remaining 57 percent of the house's total area.[6]

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[6]See <u>supra</u> note 1, discussing the availability of Schedule A deductions with respect to this area of the house.